799 A.2d 1246

**MARYLAND TRANSPORTATION AUTHORITY**

v.

**Wyatt KING.**

**No. 17, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 10, 2002.

Andrew H. Baida, Sol. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD and Gisele M. Mathews, Asst. Atty. Gen., on brief), Baltimore, for petitioner.

Hillary Galloway Davis (Davis & Associates Law Offices, P.A., on brief), Towson, for respondent.

Laurence B. Russell, Carla N. Bailey, Ober, Kaler, Grimes & Shriver, P.C., Baltimore, on brief of amici curiae, Public Justice Center and the Legal Aid Bureau, Inc., for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

In this action for judicial review of an adjudicatory administrative decision, a former employee of the Maryland Transportation Authority challenges the administrative decision terminating his employment with the Authority. The former employee claims that the Authority, in discharging him instead of imposing a lesser sanction for his misconduct, failed to follow its own regulations. The Circuit Court for Baltimore City rejected the former employee's arguments and upheld the decision terminating his employment. The Court of Special Appeals, however, held that the Authority had not "complied with its own regulations," that "the penalty imposed, *i.e.*, termination, was disproportionate to the offense," and that the misconduct was not "so serious as to warrant dismissal." The appellate court directed that the trial "court impose a sanction less severe than termination." We shall hold that the Court of Special Appeals' decision in this case went beyond the proper role of a court in reviewing the action of an administrative agency. Accordingly, we shall reverse the Court of Special Appeals' decision and direct that the Circuit Court's judgment be affirmed.

## I.

The Maryland Transportation Authority is a unit of the Maryland Department of Transportation, which is a cabinet-level principal department in the executive branch of the state government and is headed by the Secretary of Transportation. In 1987, the respondent Wyatt E. King commenced employment in the Traffic Management and Police Services Division of the Maryland Transportation Authority as a Police Communications Operator I. The Authority promoted King to the position of Telecommunications Supervisor I in 1989, and he remained in that capacity until his discharge from employment. King's duties in the position included accessing confidential information from the Criminal Justice Information System and the Motor Vehicle Administration records.

In June 1997, the Executive Secretary of the Authority requested an Assistant Attorney General to conduct an investigation into various allegations of misconduct within the Traffic Management and Police Services Division. As a result of this investigation and the Assistant Attorney General's report, the respondent King on February 2, 1998, was suspended from his position as a Telecommunications Supervisor I pending charges for termination of his employment with the Authority. King appealed the suspension, and a suspension hearing was held before an Administrative Law Judge (ALJ) of the Office of Administrative Hearings. A final administrative decision was rendered on March 10, 1998, by the Department of Budget and Management, upholding King's suspension.

In the meantime, the administrative proceedings for termination of King's employment had commenced. The Authority, on February 17, 1998, filed charges against King and sought both termination of his employment and an order disqualifying him from future employment with the Authority. The charges were filed under COMAR 11.02.08.06, Termination of a Career Service Employee, which in pertinent part provides:

"B. Cause for Termination. One or more than one of the following causes is sufficient reason for termination, though termination may be for a cause or causes other than those enumerated:

\* \* \*

(6) The employee has violated any statute, regulation, executive order, written policy, written directive, or written rule;

\* \* \*

(11) The employee has been wantonly offensive toward other employees, supervisors or members of the public;

\* \* \*

(16) The employee has willfully made a false official statement or report;

\* \* \*

(21) The employee has engaged in conduct that has brought the Department (Authority) into public disrepute."

The specific factual allegations against King were as follows:

"(6) It is alleged that, on or about February 20, 1997, while on duty, Wyatt E. King made one or more unauthorized inquiries into the Criminal Justice Information System (CJIS) in order to learn the birth date of a fellow employee, Michelle Battle.

". . . (11) a. The agency alleges that, on or about May or June 1997, Wyatt E. King conspired with a non-employee, Maria Medley, to make a false accusation of misconduct against a fellow employee, Grace DeShazo.

(11) b. The agency alleges that, on or about May 26, 1997, Mr. Wyatt E. King threatened to physically harm Grace DeShazo.

(11) c. The agency alleges that, on or about May or June 1997, Wyatt E. King reported to TS Michelle Nolan, Grace DeShazo's supervisor, that DeShazo was emotionally unstable and on the verge of a breakdown.

(11) e. The agency alleges that, on or about August 1997, Wyatt E. King accused a fellow employee, Aurora Bullock, of being neglectful in her duties with regard to the receipt of an official facsimile, when in fact, it was Mr. King who failed to take the appropriate action with respect to the facsimile.

(16) b. The agency alleges that, on or about September 1997, Wyatt E. King accused a fellow employee, Aurora Bullock, of being neglectful in her duties with regard to the receipt of an official facsimile, when in fact, it was Mr. King who failed to take the appropriate action with respect to the facsimile.

". . . (21) a. The agency alleges that beginning in October 1996, and continuing for several months thereafter Wyatt E. King brought the Authority into public disrepute in the nature of his interactions with Detective Reiland of the Baltimore City Police Department who was conducting a

criminal investigation arising from an incident in which Mr. King was shot. This conduct included, but was not limited to, the offering of conflicting statements by Mr. King and the false identification of himself as a 'Supervisor of the Tunnel Police.' "

The charges against King were initially heard by an ALJ of the Office of Administrative Hearings in October 1998. After the hearing, however, it was discovered that the audiotape record of the hearing was incomplete because of a malfunction in the recording equipment. Therefore a second *de novo* hearing, before a different ALJ (Judge Joan C. Ross) took place in June 1999.

In September 1999, ALJ Ross filed a comprehensive opinion, containing detailed findings of fact and conclusions of law, in which she found that the Authority had proven all of the charges except for the charge under COMAR 11.02.08.06B(21), relating to King's interactions with the Baltimore City Police Department growing out of the shooting incident. The ALJ concluded that King's employment should be terminated and that he should be disqualified from future employment with the Authority. As to King's argument that the applicable regulations provided for progressive discipline prior to termination, Judge Ross stated:

"The Appellant asserts that the MdTA [Maryland Transportation Authority] failed to follow its own policy by failing to afford the Appellant progressive discipline prior to termination. The Appellant cites as the basis of his position Transportation and Human Resources Policy 7G—Disciplinary Action, which states at § 1.1 'It is the policy of the Maryland Department of Transportation to apply progressive discipline where warranted and circumstances permit.' This argument must fail in that the same Human Resources policy cited by the Appellant, also states at § 4.4 that '[s]ome forms of misconduct, unacceptable performance or violations may result in immediate termination without application of any other form of discipline.' COMAR 11.02.08.06 specifically sets forth causes that, in and of themselves, constitute grounds for termination. As testified

to by Ms. Lechowicz, known violations of CJIS had been consistently resolved by termination of the employee.

"The nature of the charges that have been proven by a preponderance of the evidence, are such that reflect that the Appellant's integrity, honesty, and reliability cannot be depended upon, and support his disqualification from future employment."

Subsequently, the Secretary of the Department of Budget and Management adopted the ALJ's findings of fact and conclusions of law and "concur[red] with Judge Ross's determination that such behavior [by King] is sufficient to warrant removal ... and disqualification from future employment." A final order to this effect was issued by the Department of Budget and Management.

King filed in the Circuit Court for Baltimore City an action for judicial review of the administrative decision, pursuant to the judicial review provisions of the Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl.Vol.), § 10–222 of the State Government Article. Following oral argument, the Circuit Court (Heller, J.) issued an opinion and order. which rejected King's legal arguments, held that the administrative findings of fact were supported by substantial evidence, and affirmed the administrative decision.

King took an appeal to the Court of Special Appeals, arguing, *inter alia,* that the ALJ's findings of fact were not supported by substantial evidence, that the administrative decision was arbitrary and capricious, and that termination of his employment instead of a lesser sanction was inconsistent with the agency's progressive discipline regulation and, consequently, violated the so-called *Accardi* doctrine.[1] The Court of Special Appeals, in an unreported opinion, rejected King's arguments that the ALJ's findings of fact were unsupported by substantial evidence and that the administrative decision was arbitrary or capricious. Nevertheless, the intermediate

---

1. *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

appellate court agreed with King that the Authority failed to follow its progressive discipline regulation, and that such failure violated the *Accardi* doctrine. Based on this conclusion, the Court of Special Appeals reversed the judgment of the Circuit Court and remanded the case to the Circuit Court for that court to impose a lesser sanction. The appellate court's reasoning, as set forth in its opinion, was as follows:

"As we shall discuss ... *infra*, we are persuaded nonetheless, because of the manner in which the investigation was conducted and concluded, that the penalty imposed, i.e., termination, was disproportionate to the offense.

\* \* \*

Appellant included in his brief the following MTA Disciplinary Policies:

'1.1   It is the policy of the Maryland Department of Transportation to apply progressive discipline where warranted and circumstance permits.

1.2   The penalties that may be applied in progressive discipline include, but are not limited to the following:

— ORAL REPRIMAND

— WRITTEN REPRIMAND

— LOSS OF LEAVE

— SUSPENSION WITHOUT PAY

— INVOLUNTARY DEMOTION

— REMOVAL

— REJECTION ON PROMOTIONAL PROBATION

— DISQUALIFICATION FROM FUTURE EMPLOYMENT IN THE DEPARTMENT OF TRANSPORTATION

\* \* \*

4.1   The supervisor is responsible for correcting an employee's misconduct or unacceptable performance by imposing appropriate discipline as warranted.

4.2   In most situations, the supervisor will first hold a discussion to review the facts and advise the employee of

the area in which improvement is needed as well as the future consequences of failing to improve.

4.3 In some cases, a particular form of discipline may be bypassed, depending on the severity or number of violations, documentation provided, or the employee's work history.

4.4 Some forms of misconduct, unacceptable performance or violations may result in immediate termination without application of any other form of discipline.'

"We said, in *Hopkins v. Md. Inmate Griev. Comm'n*, 40 Md.App. 329, 335, 391 A.2d 1213 (1978):

'It is well established that rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force.... This rule has been recognized in federal and state jurisdictions and has become known as the *"Accardi* doctrine" since it was announced in *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There the Supreme Court vacated a deportation order of the Board of Immigration of Appeals because the Board and the Attorney [G]eneral failed to follow their own regulations.'

"Pleading that the instant case cries out for progressive discipline, appellant complains that '. . . the charges involve allegations which go back, in some cases to 1996. Even the most recent incidents referenced in the allegations occurred in August, 1997, nearly six months before appellant was terminated in February, 1998.' The Authority responds by reminding us that Transportation and Human Resources Policy Section 7G, paragraph 1.1 provides that '[i]t is the policy of the Maryland Department of Transportation to apply progressive discipline *where warranted and circumstance permits.*' "

"Appellee, in its brief, alludes to the initiation of 'a broad investigation' after which it was determined that there were grounds for termination of appellant, 'based on several different incidents.' Concomitant with our discussion in the

preceding two sections of this opinion, we believe that, under appropriate circumstances—and probably most—the Agency would have been justified in terminating the employee without affording him or her the benefit of progressive discipline when it is asserted that there was an improper use of the CJIS system. In this case, however, appellee responded at oral argument to our inquiry about the timing of appellant's termination by pointing to the time necessary to complete the investigation of the allegations. Our concern was grounded in the apparent logic in, at the very least, seeking a suspension of appellant ... while the investigation was ongoing if indeed the charges were deemed by the Agency to be as grave as it now avers.

"Our review of the record and consideration of the positions of the parties at oral argument and in their briefs, persuades us that, whether it be termed 'progressive discipline' or simply 'prompt and speedy disposition of the charges,' appellee has not, in this case, complied with its own regulations. Had it done so, appellant would have been in a better position to prepare a defense at a time when recollection of the subject events was fresh in the minds of all involved. Simply put, we do not believe that appellee can credibly say that the offense(s) were so serious as to warrant dismissal and yet were not so grave that appellant was permitted to remain in a position to repeat the alleged violations. We shall, accordingly, remand this case with directions that the court impose a sanction less severe than termination."

The Maryland Transportation Authority filed in this Court a petition for a writ of certiorari, challenging both the Court of Special Appeals' adoption of the *Accardi* doctrine and the intermediate appellate court's application of the doctrine in this case. King did not file a cross-petition or conditional cross-petition for a writ of certiorari contesting the Court of Special Appeals' holdings that the administrative findings of fact were supported by substantial evidence and that the administrative decision was neither arbitrary nor capricious.

This Court granted the Authority's petition, *Maryland Transportation Authority v. King*, 363 Md. 661, 770 A.2d 169 (2001).

In its petition and briefs, the Authority points out that this Court has never previously cited the Supreme Court's opinion in *Accardi v. Shaughnessy, supra*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, and that we should "decide when, if at all, the *Accardi* doctrine applies to an executive agency's actions." (Certiorari petition at 6). The Authority further argues that there was no violation of the agency's regulation in this case, that the determination of the appropriate sanction to be imposed on King was a "discretionary decision" for the agency to make, and that the Court of Special Appeals improperly "reversed on the ground that it would not have exercised its judgment in the same way" as the agency did. (*Id.* at 7–8).

King maintains that this Court should adopt the *Accardi* doctrine. He also contends that the Court of Special Appeals correctly held that the Authority violated its regulations. He points to paragraph 4.4 of the regulations, on which the Authority chiefly relied, and which provides that "some forms of misconduct ... may result in *immediate* termination without application of any other form of discipline." (Emphasis added). According to King, the word "immediate" means that, if the Authority intends to terminate the employee rather than impose a lesser sanction, it must do so as soon as the evidence of misconduct is known to the agency. King maintains that the agency may not, when it receives evidence of misconduct, retain the employee pending an investigation and then suspend the employee pending resolution of the charges. King's position is that "[t]here was no immediacy at all in the way in which the Agency approached Mr. King's termination...." (Respondent's brief at 6–7).

## II.

Initially, we shall briefly comment upon the parties' arguments concerning the so-called *Accardi* doctrine.

In *Accardi v. Shaughnessy, supra*, 347 U.S. at 268, 74 S.Ct. at 504, 98 L.Ed. at 687, the Supreme Court of the United

States held that an administrative decision is subject to invalidation because of the agency's *"failure to exercise* its own discretion contrary to existing valid regulations." (Emphasis in original). Subsequently in a series of cases, the Supreme Court, relying on the *Accardi* case, has recognized a rule of federal administrative law that, with some exceptions, an administrative agency is required to follow its own procedures or regulations. *See, e.g., United States v. Caceres,* 440 U.S. 741, 751 n. 14, 99 S.Ct. 1465, 1471 n. 14, 59 L.Ed.2d 733, 743 n. 14 (1979) (while a violation of agency regulations did not raise constitutional questions under the circumstances, "[i]t does not necessarily follow, however, as a matter of either logic or law, that the agency had no duty to obey them"); *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270, 294 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required"); *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403, 1410 (1957) ("[R]egulations validly prescribed by a government administrator are binding upon him as well as the citizen, and . . . this principle holds even when the administrative action under review is discretionary in nature"). *But, cf. American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 538–539, 90 S.Ct. 1288, 1292–1293, 25 L.Ed.2d 547, 552–553 (1970).

The Court of Special Appeals has recognized or applied the *Accardi* doctrine in numerous opinions. *See, e.g., Anastasi v. Montgomery County,* 123 Md.App. 472, 491, 719 A.2d 980, 990 (1998); *G & M Ross v. Bd. of License Commissioners,* 111 Md.App. 540, 543, 682 A.2d 1190, 1192 (1996); *Board of School Commissioners v. James,* 96 Md.App. 401, 421–422, 625 A.2d 361, 366–367, *cert. denied,* 332 Md. 382, 631 A.2d 452 (1993); *Board of Education of Baltimore Co. v. Ballard,* 67 Md.App. 235, 239–243, 507 A.2d 192, 194–196 (1986); *Board of Education v. Barbano,* 45 Md.App. 27, 41–42, 411 A.2d 124, 131 132 (1980); *Hopkins v. Maryland Inmate Grievance Commission,* 40 Md.App. 329, 335–338, 391 A.2d 1213, 1216–1217

(1978). The Court of Special Appeals has taken the position that, in situations where the *Accardi* doctrine is applicable, it does not matter whether one was prejudiced by the failure of the agency to follow its procedures or regulations. *See, e.g., Board of Education of Baltimore Co. v. Ballard, supra,* 67 Md.App. at 239 n. 2, 507 A.2d at 194 n. 2.

Although this Court has not previously discussed the *Accardi* doctrine as such, or even cited *Accardi v. Shaughnessy, supra,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, it is clear that, at least to some extent, a similar doctrine is reflected in Maryland administrative law. Thus, the judicial review section of the Maryland Administrative Procedure Act provides that a reviewing court may "reverse or modify the [administrative] decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision . . . (iii) results from an unlawful procedure [or] (iv) is affected by any other error of law. . . ." Code (1984, 1999 Repl.Vol.), § 10–222(h)(iii) and (iv) of the State Government Article.

Moreover, numerous opinions of this Court have involved the review of agency action to determine if the agency complied with its regulations and required procedures. *See, e.g., Board of Physician v. Levitsky,* 353 Md. 188, 206–207, 725 A.2d 1027, 1036–1037 (1999) (An agency's violations of procedures which do not "compromise the accused's opportunity for a full and fair hearing on the charges," or which were not raised during the administrative proceedings, furnish no basis to invalidate the agency's decision); *Dept. of Correctional Services v. Howard,* 339 Md. 357, 369–370, 663 A.2d 74, 80 (1995) (The failure of an agency to complete an investigation within the time set forth in a regulation did "not reflect any prejudice . . . that was caused by the delay," and therefore the administrative decision was affirmed); *Ward v. Dept. of Public Safety,* 339 Md. 343, 353, 663 A.2d 66, 71 (1995) (Where the suspension of an employee was not authorized by the agency's regulation, the suspension was vacated); *Heft v. Md. Racing Commission,* 323 Md. 257, 265, 592 A.2d 1110, 1114 (1991); *Resetar v. State Board of Education,* 284 Md. 537, 550, 399 A.2d 225, 232, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62

L.Ed.2d 49 (1979). In addition, we have recognized that, under some circumstances, mandamus or other traditional actions may lie to enforce administrative compliance with procedural requirements or duties. *Gisriel v. Ocean City Bd. of Sup'rs Elections,* 345 Md. 477, 496–500, 693 A.2d 757, 767–769 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), and cases there cited; *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 17, 511 A.2d 1079 (1986).

In the present case, however, we need not further explore the *Accardi* doctrine and the extent of its applicability to Maryland administrative proceedings. This is because of our conclusion, explained below, that the Maryland Transportation Authority did not violate any of its regulations.

## III.

It is undisputed that the pertinent regulations authorize the Authority to terminate an employee for some types of misconduct in lieu of applying a lesser sanction. Nonetheless, King argues, and the Court of Special Appeals seemed to hold, that the word "immediate" in paragraph 4.4 of the agency's disciplinary policy means that, when the agency first learns of alleged misconduct deemed to be sufficiently serious to require termination, the agency must at that time remove the employee from the workplace by a suspension or termination. King points out that his alleged misconduct occurred during the period from August 1996 to June 1997, that the Assistant Attorney General's investigation began in June 1997, but that King was not suspended until February 2, 1998. According to King, allowing him to remain in his job "spanning a period of over a year" from the time of his alleged misconduct violated the "immediate termination" language of paragraph 4.4. (Respondent's brief at 8–9). The Authority, on the other hand, argues that the word "immediate" in paragraph 4.4 "simply mean[s] that termination may be sought ... without resorting to any other 'particular form of discipline.'" (Petitioner's reply brief at 2).

Paragraphs 4.3 and 4.4 of the disciplinary policy provide as follows (emphasis added):

"4.3 In some cases, a particular form of discipline may be bypassed, depending on the severity or number of violations, documentation provided, or the employee's work history.

"4.4 Some forms of misconduct, unacceptable performance or violations may result in *immediate* termination without application of any other form of discipline."

When viewed in context, it seems clear that the word "immediate" means without first resorting to other discipline. The language of both of the above-quoted paragraphs, taken together, simply states that lesser forms of discipline may be bypassed. King's interpretation of "immediate termination" is based on taking those words out of context and ignoring the next eight explanatory words, "without application of any other form of discipline."

■ Furthermore, our reading of the regulation is confirmed by the principle that a great deal of deference is owed to an administrative agency's interpretation of its own regulation. Judge Chasanow for this Court, in *Ideal Federal v. Murphy*, 339 Md. 446, 461, 663 A.2d 1272, 1279 (1995), set forth the principle as follows:

"In *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965), the Supreme Court of the United States noted that:

'When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.

* * *

'When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.'

"*See also First Gibraltar Bank, FSB*, 19 F.3d [1032] at 1047. Additionally, an agency's interpretation of an administrative regulation is 'of controlling weight unless it is

plainly erroneous or inconsistent with the regulation.' *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945)."

In *Md. Comm'n On Human Relations v. Bethlehem Steel*, 295 Md. 586, 592–593, 457 A.2d 1146, 1149–1150 (1983), Judge Davidson for the Court explained:

"This Court has recognized that the interpretation of an agency rule is governed by the same principles that govern the interpretation of a statute. *See, e.g., Dorsey v. Beads*, 288 Md. 161, 176, 416 A.2d 739, 747 (1980); *Messitte v. Colonial Mortgage Serv. Co. Assocs., Inc.*, 287 Md. 289, 293, 411 A.2d 1051, 1053 (1980). More important, agency rules are designed to serve the specific needs of the agency, are promulgated by the agency, and are utilized on a day-to-day basis by the agency. A question concerning the interpretation of an agency's rule is as central to its operation as an interpretation of the agency's governing statute. Because an agency is best able to discern its intent in promulgating a regulation, the agency's expertise is more pertinent to the interpretation of an agency's rule than to the interpretation of its governing statute."

For recent cases setting forth the principle that deference should be given to agency interpretations, *see, e.g., Division of Labor v. Triangle Gen. Contractors*, 366 Md. 407, 416–417, 784 A.2d 534, 539–540 (2001); *Marzullo v. Kahl*, 366 Md. 158, 172–173, 783 A.2d 169, 177–178 (2001); *State Ethics Commission v. Antonetti*, 365 Md. 428, 446–447, 780 A.2d 1154, 1165–1166 (2001); *Adamson v. Correctional Medical Services*, 359 Md. 238, 266, 753 A.2d 501, 516 (2000); *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999); *Lussier v. Md. Racing Commission*, 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996).

The Authority's interpretation of the regulation also makes more sense than King's interpretation. Allegations of serious misconduct or some evidence of serious possible misconduct by an employee may come to the Authority's attention, but there may be a substantial question concerning the truth of the

allegations or whether the misconduct actually occurred. While not required, it may be fairer to the employee for him or her to remain on the job while the allegations or evidence are being investigated. If it turns out that the allegations were false, or that no misconduct took place, the employee will not have been harmed by a suspension. The Court of Special Appeals, as well as King, seemed to suggest that a suspension *with pay* could be imposed during the investigation. A suspension *with pay* is not expressly authorized by paragraph 1.2 of the disciplinary policy. Assuming, however, that the Authority is so authorized, a suspension can harm an employee even if it is with pay. Moreover, the choice would properly be for the agency to make, not the courts.

██ As earlier mentioned, the Court of Special Appeals also stated that termination of King's employment "was disproportionate to the offense" and that King's misconduct was not "so serious as to warrant dismissal." This language may suggest that judicial review of an administratively imposed sanction encompasses proportionality review or that courts may review administrative decisions for abuse of discretion. Neither the Administrative Procedure Act nor general Maryland administrative law principles authorize such review.

The Administrative Procedure Act, in § 10–222(h) of the State Government Article, sets forth the standards for judicial review of contested cases as follows:

"(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

These provisions reflect the standards, set forth in this Court's opinions, for judicial review of adjudicatory administrative decisions generally, whether or not the review is pursuant to the state Administrative Procedure Act. *See Board of License Com'rs v. Corridor Wine,* 361 Md. 403, 411, 761 A.2d 916, 920 (2000); *Pollock v. Patuxent Institution,* 358 Md. 656, 661, 668–669, 751 A.2d 496, 499, 503–504 (2000); *Prince George's County v. Beretta,* 358 Md. 166, 176 n. 3, 747 A.2d 647, 652 n. 3 (2000); *Bucktail v. Talbot County,* 352 Md. 530, 549–558, 723 A.2d 440, 449–453 (1999), and cases there cited.

▮ The grounds set forth in § 10–222(h) for reversing or modifying an adjudicatory administrative decision do not include disproportionality or abuse of discretion. As long as an administrative sanction or decision does not exceed the agency's authority, is not unlawful, and is supported by competent, material and substantial evidence, there can be no judicial reversal or modification of the decision based on disproportionality or abuse of discretion unless, under the facts of a particular case, the disproportionality or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be "arbitrary or capricious." In the case at bar, the Court of Special Appeals rejected King's argument that the administrative decision was arbitrary or capricious, and King did not seek certiorari review of that holding. In addition, even assuming *arguendo* that termination was disproportionate to King's misconduct, it was clearly not so disproportionate as to be "arbitrary or capricious" within the meaning of § 10–222(h)(vi).[2]

---

**2.** We also note another problem with the Court of Special Appeals' judgment. The intermediate appellate court directed the trial court to impose a sanction less than termination. If the sanction of termination were unlawful or unsupported by substantial evidence or arbitrary or capricious, and a range of lesser sanctions would be permissible, it

For the foregoing reasons, the judgment of the Circuit Court, upholding the administrative decision, should have been affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT WYATT KING.*

WILNER and HARRELL, JJ., filed a concurring opinions.

WILNER, Judge, concurring.

I concur in the result reached by the Court and in most of Judge Eldridge's opinion. The one part of the opinion with which I take issue is the suggestion that there is some substantive difference between an abuse of discretion and an arbitrariness and capriciousness standard of review and the conclusion flowing from that suggestion that, unless the reviewing court declares the ruling or decision under consideration to be arbitrary or capricious, it may not reverse that ruling or decision even upon a finding that the ruling or decision (1) is prejudicial to the complainant, and (2) so exceeds the bounds of the agency's discretion with respect to the matter as to constitute an abuse of the agency's discretion. For one thing, this is a matter that need not be addressed in this case; whether there is some definable distinction between abuse of discretion and arbitrariness is not before us. In any event, the Court seems to be suggesting a distinction that really does not exist.

The Court seems disturbed because the Court of Special Appeals, in its opinion, made the comment that termination of

---

would be for the agency and not the reviewing court to determine the appropriate permissible sanction. *See Travers v. Baltimore Police Department,* 115 Md.App. 395, 427, 693 A.2d 378, 393 (1997); *Warner v. Town of Ocean City,* 81 Md.App. 176, 199, 567 A.2d 160, 172 (1989).

King's employment was "disproportionate to the offense." I agree that, as a general proposition, a reviewing court may not reverse or modify an agency decision because it believes that a sanction imposed by the agency was "disproportionate." Proportionality review is not for the court unless it reaches the point of the decision exceeding the bounds of the agency's lawful authority or discretion and, *for that reason*, being arbitrary, capricious, or otherwise unlawful. The imposition of sanctions for violations of laws administered by the agency is a matter committed by the Legislature to the Executive Branch agency, not to the courts, and so long as the sanction imposed is one that was within the Constitutional and statutory authority of the agency to impose and was not imposed arbitrarily or capriciously, the court has no business second-guessing the agency's decision. That is really all we need to say, if we need to say anything.

To declare the much broader principle that a Circuit Court may not reverse an agency decision or ruling that the court finds constitutes an abuse of the agency's discretion is both unnecessary and, in my view, misleading. That goes far beyond the matter of proportionality review of sanctions. The fact that the words "abuse of discretion" do not appear in the judicial review section of the Maryland APA does not mean that agencies are immune from judicial review when, in fact, they abuse their allowable discretion, either under common law principles or under the APA. In a nutshell, this is, to me, a semantic matter, of what language the court should use. The challenge by the complaining party should be stated in the statutory language, that the ruling or decision is arbitrary or capricious, and the court's ruling on the challenge should also use that terminology. That is not to say, however, that there is some difference between the two concepts. It seems to me that a decision or ruling that exceeds the bounds of the agency's discretion is, for that reason, either arbitrary or otherwise unlawful, and, in either event, if prejudicial, is subject to reversal by a reviewing court.

The issue of whether an agency decision or ruling may be reversed for abuse of discretion does not depend on how much

discretion the agency actually has in the matter. That is generally a matter of substantive law. The scope or range of discretion varies, depending on the subject matter and the effect of the ruling. Whether the scope of discretion is broad or narrow, however, the judicial review issue emerges only when the agency has abused whatever discretion it has and the ruling resulting from that abuse is prejudicial to the complaining party.

The judicial review provision of the Federal Administrative Procedure Act (title 5 U.S.C. § 706) directs a reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be:

"(A) *arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;*

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [when evidentiary hearing is required] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to de novo trial by the reviewing court."

(Emphasis added).

The judicial review provision of the Maryland APA (Md. Code, § 10–222(h) of the State Government Article) covers much the same ground but is worded differently. It authorizes a reviewing court to reverse or modify the agency decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

"(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) *is arbitrary or capricious."*

(Emphasis added).

The Court concludes from the fact that the words "abuse of discretion" do not appear in § 10–222(h), as they do in § 706 of the Federal Act, that rulings constituting an abuse of the agency's discretion are beyond judicial remediation unless they also are arbitrary or capricious. That suggests that there is some difference between the two concepts—that a ruling may constitute an abuse of discretion yet not be arbitrary or capricious. Such a notion finds no support in the law, however, which regards the terms "abuse of discretion" and "arbitrary or capricious" as meaning the same thing—the one often being defined by reference to the other.

In *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 635 n. 7, *rehearing denied,* 979 F.2d 1013 (5th Cir.1992), *appeal after remand,* 35 F.3d 560 (1994), the court declared outright that the difference between an "abuse of discretion" standard and an "arbitrary and capricious" standard was semantic, not substantive. In reviewing the decision of a plan administrator under ERISA, the court noted that the District Court had referred to an "arbitrary and capricious" standard of review, rather than the "abuse of discretion" standard that the Fifth Circuit court had used, but concluded that there was "only a semantic, not a substantive difference" between the two labels. *Id.,* at 635 n. 7. To the same effect are *Donaho v. FMC Corp.,* 74 F.3d 894, 898 n. 5 (8th Cir.1996); *Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600, 605 (9th Cir.1996); and *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 n. 1 (10th Cir.1996). *See also United States v. McWilliams,* 163 F.2d 695, 697 (D.C.Cir.1947) (abuse of discretion means action which is arbitrary, fanciful, or clearly unreasonable); *Torrance v. Caddo Parish Police Jury,* 119 So.2d 617, 619 (La.App.1960) (abuse of discretion results from conclusion reached capriciously or in an arbitrary manner); *N.L.R.B. v. Guernsey–*

*Muskingum Electric Co–op., Inc.*, 285 F.2d 8, 10 (6th Cir. 1960) (in review of agency decision, abuse of discretion equated with arbitrary action not justifiable in view of situation and circumstances); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 936 (Fed.Cir.1993) (abuse of discretion occurs when decision is clearly unreasonable or arbitrary); *Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090, 1092 (Fed.Cir.1993) (abuse of discretion occurs when decision is simply arbitrary and unjustifiable in view of the circumstances); *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986) (abuse of discretion occurs when decision is unreasonable, arbitrary, or fanciful); *State v. Barton*, 335 N.C. 696, 441 S.E.2d 295 (1994); *Aero–Lite Window Co. v. Jackson*, 115 Ohio App. 257, 184 N.E.2d 677, 678 (1962). Some courts have defined "abuse of discretion" as occurring when "no reasonable person could take the view" adopted by the lower tribunal, which, to me, is the same as saying when the decision is arbitrary. *See United States v. Ramirez*, 45 F.3d 1096, 1101 (7th Cir.1995). In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court looked at the components of § 706(2)(A) together, as if they articulated one standard.

I cannot conceive of a ruling or action that legitimately could be found to result from an abuse of the agency's allowable discretion and yet not be arbitrary or capricious. If there is such a range, what is it and how would one define it? Even if one could conjure up a setting in which a ruling or action could be regarded as constituting an abuse of discretion but yet not be arbitrary or capricious, it surely would result from an unlawful procedure, be affected by "any other error of law," or be unsupported by competent, material, and substantial evidence, and be reversible on one of those grounds. The Court, I fear, has, quite unnecessarily, injected an area of uncertainty in this already difficult area of law.

HARRELL, Judge, concurring.

Like Judge Wilner, I concur in the result reached by the Court and most, if not all, of the Court's opinion. Also, I

agree with Judge Wilner's point in his concurring opinion that the Court's opinion unnecessarily imagines a sub-issue pitting the "arbitrary and capricious" standard of review in the Maryland APA (Md.Code, § 10–222(h)(vi) of the State Government Article) against a strawman "abuse of discretion" standard (slip op. at 18–20). Unlike Judge Wilner, however, I would stop at that and decline to address or ponder further on the merits of this illusory sub-issue, at least in the present case.

The Court's opinion introduces the specter of potentially divergent standards of judicial review based on its perception that the Court of Special Appeals, in its assessment of King's proportionality challenge, may have "suggest[ed]" that it reviewed the Maryland Transportation Authority's action based on an abuse of discretion standard (slip op. at 18). It is clear from my reading of the opinion of the Court of Special Appeals, however, that the intermediate appellate court did not utilize an abuse of discretion standard in its analysis of King's *Accardi* contention. To the contrary, the court, in its unreported, *per curiam* opinion, appears to have viewed, under an arbitrariness test, the question of the agency's application (or not) or its rules and policies. I glean this from the court's threshold mention of *Kohli v. LOOC, Inc.,* 103 Md.App. 694, 718, 654 A.2d 922 (1995), advanced in King's argument in his brief before that court, where agency arbitrariness is referred to as the underlying evil intended to be remedied by proper application of the *Accardi* doctrine. I could find nothing in that court's analysis of King's proportionality challenge from which to infer that the court was basing its otherwise erroneous conclusion, semantically or substantively, on abuse of agency discretion, separate from or commingled with agency arbitrariness. Accordingly, I would not engage, as Judge Wilner does in his concurrence, in any meaningful consideration of the difference (if any) between "arbitrary and capricious" and "abuse of discretion." The question simply is not presented (nor briefed or argued) in this case.

By the same token, I have some concern that portions of the Court's opinion could be misconstrued by any who give it a less than careful reading regarding the sweep of its observations regarding the role abuse of discretion may (or may not) play in any legal modality in which a court properly considers a challenge to action taken by an administrative agency. Judge Eldridge, writing for the Court, certainly is correct that, as such, "arbitrary and capricious" has been a Maryland standard for review of agency actions in statutorily-authorized judicial review situations governed by the Maryland APA.[3] He also is correct that the same standard has been construed as applying in other statutorily-authorized judicial review cases

---

**3.** For example, at the 7 April 1992 meting of the Governor's Commission To Revise The APA, Judge Eldridge, then a member of the Commission, after reciting the extant language of "Judicial Review" section of the State APA, explained:

'(g) Decision—In a proceeding under this section, the court may:
  (1) remand the case for further proceedings;
  (2) affirm the decision of the agency; or
  (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:
      (i) is unconstitutional;
      (ii) exceeds the statutory authority or jurisdiction of the agency;
      (iii) results from an unlawful procedure;
      (iv) is affected by any error of law;
      (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
      (vi) is arbitrary or capricious.'

Judge Eldridge stated that this is standard language and also contains a remand provision. Basically, the same authority and provisions apply to all agencies with the exception of the Liquor Boards.

Judge Eldridge summarized § 215 stating that the wording is substantially standard throughout the country and is essentially the same in virtually all APAs. It seems to be all encompassing and embodies what courts were saying in common law decisions before the APA was enacted.

Judge Eldridge saw no reason to change the standards of judicial review; he was not sure how much could be changed without raising a constitutionality issue.

*Governor's Commission To Revise The APA*, Minutes, 7 April 1992.

The Commission subsequently neither discussed nor recommended any change in the language of the APA as to the arbitrary and capricious standard.

not governed by the state APA (slip op. at 19). To the extent, however, that his words would be construed as suggesting that "abuse of discretion" in no way plays a role in review by courts of agency action through legal modalities other than a petition for judicial review, I would caution the reader.

In the final Report of the Governor's Commission To Revise the APA, dated 1 September 1992,[4] the Commission, in the section entitled "Judicial Review of Agency Actions," stated:

### VII. *JUDICIAL REVIEW OF AGENCY DECISIONS*

*It has long been established that Maryland courts have inherent power to correct abuses of discretion* and arbitrary, illegal, capricious, or unreasonable acts of administrative agencies by mandamus, injunction or otherwise. *Heaps v. Cobb,* 185 Md. 372, 45 A.2d 73 (1945). When judicial review or a statutory appeal process is provided by statute, the statutory method of review is exclusive and the court may not exercise its inherent powers to review the administrative decision by a mandamus proceeding. The jurisdiction of the court on appeal is limited to that conferred by the statute. *Commission on Medical Discipline v. Stillman,* 291 Md. 390, 435 A.2d 747 (1981); *Lee v. Secretary of State and Mahoney,* 251 Md. 134, 246 A.2d 562 (1968). (Emphasis supplied).

*Heaps v. Cobb* embraces language from a slightly earlier case, *Hecht v. Crook,* 184 Md. 271, 280–81, 40 A.2d 673, 677 (1945):

In the last analysis, the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative[,] or with the exercise of sound

---

4. Judge Eldridge resigned from the Commission on 21 July 1992, prior to publication of its final Report.

administrative discretion, where discretion is clearly conferred.

*Heaps,* 185 Md. at 379, 45 A.2d at 76 (quoting *Hecht,* 184 Md. at 280–81, 40 A.2d at 677).

Therefore, non-APA, non-statutory forms of court review of administrative agency action include abuse of discretion, *in addition* to arbitrary and capricious, as a standard of review. The Court's opinion and observations in the present case with regard to abuse of discretion are confined to statutorily-authorized avenues of judicial review (the old "administrative appeal"), regardless of whether the State APA applies.