Dear Ronald L. Freeland
You have asked whether Maryland Transportation Authority Police may be assigned to patrol MARC railroad trains and stations, including Amtrak stations.
As set forth in greater detail below, State law allows for the jurisdiction of the Transportation Authority Police to be extended by order of the Governor. A 2004 executive order directed the Transportation Authority Police to exercise police powers to protect publicly owned and common carrier "transportation assets" — a phrase that includes MARC trains and stations served by MARC trains. Thus, in our opinion, Transportation Authority police officers may be assigned to patrol MARC trains and stations in Maryland, including Amtrak stations served by MARC trains. The Transportation Authority Police may enter into agreements with the other law enforcement agencies that also have jurisdiction over those locations, including the Amtrak Police Department, to coordinate their efforts.
 I Background
A. Maryland Transportation Authority Police
The lineage of the Maryland Transportation Authority Police can be traced back to several police forces that were created beginning in the middle of the 20th century to patrol various transportation facilities in Maryland — including the State Roads Commission Bridge Guards, the Harbor Tunnel Special Police, the Maryland Port Authority Special Police, the State Aviation Administration Police, and others. See MdTA Police Milestones athttp://www.mdta.state.md.us/mdta/servlet/dispatchServlet?url=/ Police/policeMain.jsp. By 1998, these various law enforcement agencies had all been absorbed into what is now known as the Maryland Transportation Authority Police. Id.
Currently, under State law, the Transportation Authority Police may exercise police powers on property "owned, leased, or operated by or under the control of the Maryland Transportation Authority, Maryland Aviation Administration, and Maryland Port Administration." Annotated Code of Maryland, Transportation Article ("TR"), § 4-208(b)(1). Indeed, the statute directs the Transportation Authority Police to provide police services to those three agencies. TR § 4-208(e).
In addition, the jurisdiction of the Transportation Authority Police can be extended to other property of the State Department of Transportation, as well as the area within a 500-foot perimeter of agency property, if the Governor declares a state of emergency or if necessary "to protect against actual or threatened physical injury or damage to State employees or State property or assets" and certain procedural requirements are satisfied. TR § 4-208(b)(2)-(3).[1]
Finally, and most pertinent to your question, the statute provides:
 (4) The police officer may not exercise [police] powers on any other property unless:
 (i) Engaged in fresh pursuit of a suspected offender;
 (ii) Specially requested or permitted to do so in a political subdivision by its chief executive officer or its chief police officer; or
 (iii) Ordered to do so by the Governor.
TR § 4-208(b)(4).
In 2004, the Governor invoked the authority delegated by the Legislature in TR § 4-208(b)(4)(iii) to expand the jurisdiction of the Transportation Authority Police. The Governor directed, in an executive order, as follows:
 The Maryland Transportation Authority Police, while on duty, under the authority of the Chief of the Transportation Authority Police, shall, pursuant to Section 4-208(b)(4)(iii) . . . and by this Executive Order, have all the powers granted to a peace officer and a police officer of this State as provided by law, henceforth with expanded jurisdiction and authority to protect its facilities and areas of primary jurisdiction and to enhance the protection and safety of all publicly owned, commercial, and/or common carrier transportation assets throughout the State. The Maryland Transportation Authority shall adopt policies and procedures to implement the provisions of this Executive Order and to ensure the safe, efficient, and cooperative provision of law enforcement services in instances in which the expanded jurisdiction and authority is exercised in this State.
COMAR 01.01.2004.28B (May 18, 2004) (emphasis added).
Transportation Authority police officers also have the same authority as other police officers in the State to make arrests, conduct investigations, and otherwise enforce the laws of the State throughout the State in specified circumstances authorized by statute[2] or when acting in fresh pursuit. See Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 2-102; see also 89 Opinions of the AttorneyGeneral 66, 70-72 (2004); 89 Opinions of the Attorney General 158 (2004).
B. MARC Trains and Stations
Since the mid-1970s, the State has provided the rolling stock for commuter rail service in the Maryland and entered into operating agreements with various railroads to provide that service. See
History of MARC athttp://www.mtamaryland.com/about/transitprofiles/. That service has operated under the logo "MARC" since 1983 and is currently overseen by the Maryland Transit Administration, one of the modal administrations of the Maryland Department of Transportation. TR §§ 2-107, 7-902. Currently, the MARC system provides commuter rail service from Perryville and Baltimore (and intermediary points) to Union Station in Washington, D.C. It also provides service from Frederick, and Martinsburg, West Virginia, (and intermediary points) to Union Station. MARC trains stop at 42 stations. Most of the passenger stations served by MARC trains are owned or leased by the State and operated by the Transit Administration; four of the stations are owned by Amtrak, the federally chartered and owned interstate passenger railroad.[3]
Various law enforcement authorities have jurisdiction with respect to MARC trains and stations. The Maryland Transit Administration Police exercise police powers on "property owned, leased, or operated upon, by, or under the control of the [Maryland Transit] Administration]," which includes railroad facilities. TR § 7-207(b)(1). However, that jurisdiction does not limit the authority of other police agencies, such as the Maryland Transportation Authority police, on such property. TR § 7-207(b)(2). The Amtrak Police Department is authorized under federal law to provide security for passengers and property of Amtrak.49 U.S.C. § 24305(e). In addition, law enforcement agencies in the jurisdictions where stations and tracks are located also may exercise police powers in those locations.
 II Analysis
The General Assembly has defined by statute the areas within which a Transportation Authority police officer ordinarily may exercise police powers — essentially State-operated toll facilities, airport facilities, and port facilities. TR § 4-208. The statute prohibits officers from normally exercising police powers on other property "unless . . . [o]rdered to do so by the Governor." TR § 4-208(b)(4)(iii).[4] In accordance with that delegation, the Governor has issued such an order. That order grants the Transportation Authority Police "expanded jurisdiction and authority . . . to enhance the protection and safety of all publicly owned, commercial, and/or common carrier transportation assets throughout the State." COMAR01.01.2004.28B.
Whether this order gives the Transportation Authority Police authority to patrol MARC trains and stations turns on whether they are properly characterized as "publicly owned, commercial, and/or common carrier transportation assets." The order does not define the term "transportation asset." There is no question that MARC's rolling stock is "publicly owned." Other railroad property used for operation of the trains, such as the MARC and Amtrak stations, even if not "publicly owned," surely could be characterized as belonging to a commercial enterprise or a common carrier. Cf. Annotated Code of Maryland, Public Utility Companies Article, § 1-101(e) (defining "common carrier" to include railroads). Moreover, it is notable that the executive order was issued in the spring of 2004 shortly after terrorist bombings targeted commuter trains and train stations in Madrid, Spain. Undoubtedly the order was intended to allow Transportation Authority police officers to augment the existing law enforcement units that serve commuter trains and stations in Maryland.
We understand that, at the time the Executive Order was issued, the Chief of the Transportation Authority Police construed the phrase "transportation asset" broadly in a general order that he issued to all Transportation Authority police personnel. General Order # 04-20 (May 24, 2004). Among other things, he construed the phrase to include "any . . . vehicle, . . . conveyance, railroad, . . . or other transportation resource, public or private, including those described in Transportation Article § 21-101. . . . " TR § 21-101 defines a number of transportation-related terms, including "railroad" and "railroad train."See TR § 21-101(p), (r); see also TR § 7-101(j) (defining "railroad facility" to include "any facility used in providing railroad services," including locomotives, cars, and real property). Thus, it is clear that the agency charged with carrying out the Executive Order interpreted it to include railroads and railroad trains at the time the order was issued. Cf. Adventist Health Care, Inc. v.Maryland Health Care Commission, 392 Md. 103, 119-20, 896 A.2d 320
(2006) (courts show great deference to interpretation of statute or regulation by agency charged with its administration); MarylandTransportation Authority v. King, 369 Md. 274, 288-89, 799 A.2d 1246
(2002) (same).[5]
This interpretation of the Executive Order was well known. An analysis of the Transportation Authority's budget prepared by legislative staff for the 2005 session of the General Assembly reported that the Executive Order had been issued to expand the jurisdiction of the Transportation Authority police with respect to transportation assets and that the expanded jurisdiction included "dispatch security and law enforcement on Maryland Rail Commuter rail lines." Department of Legislative Services, Analysis of the FY 2006 Maryland Executive Budget, 2005, J00J00 — Maryland Transportation Authority, at p. 4; see http://mlis. state. md.us /2005rs/budget_docs/All/Operating/J00J00_-_Maryland_Transpor tation_Authority.pdf.
Finally, when multiple police agencies have jurisdiction in a particular area, it is a common practice to enter into a memorandum of understanding that delineates a division of labor and responsibility among those agencies. Cf. TR § 7-207(e) (specifically authorizing Transit Administration Police to enter into agreements with other public safety authorities concerning its responsibilities). We recommend that the Transportation Authority Police enter into appropriate memoranda of understanding, particularly with the Amtrak Police Department.
 III Conclusion
State law allows for the jurisdiction of the Transportation Authority police to be extended by order the Governor. A 2004 executive order directed the Transportation Authority police to exercise police powers to protect publicly owned and common carrier "transportation assets" — a phrase that properly includes MARC trains and stations served by MARC trains. Thus, in our opinion, Transportation Authority police officers m ay be assigned to patrol MARC trains and stations, including Amtrak stations in Maryland.[6] The Transportation Authority Police may enter into agreements with the other law enforcement agencies that also have jurisdiction over those locations, including the Amtrak Police Department, to coordinate their efforts.
Douglas F. Gansler
Attorney General
Robert N. McDonald
Chief Counsel
Opinions and Advice
[1] The expanded jurisdiction under these particular provisions does not extend to highways or "other public property or waterway open for public conveyance." TR § 4-208(b)(2)(i).
[2] Those circumstances include joint investigations with other police agencies, situations where the officer is rendering assistance to another officer or is acting at the request of another officer and emergency situations. CP § 2-102(b)(3). In those circumstances, the officer must be acting in compliance with the regulations of the officer's department and must notify certain local police officials. CP § 2-102(b)(3)(ii), (c).
[3] In addition, one station is owned by the City of Gaithersburg and one station is owned by the National Park Service.
[4] The provision allowing for extension of jurisdiction pursuant to a gubernatorial order had been a part of the statutes governing the State Aviation Police and the Toll Facilities Police, two of the predecessors of the Transportation Authority police, since 1974. Chapter 665, §§ 2, 4, Laws of Maryland 1974, then codified at Article 1A, § 42(b) and
Article 41, § 208C(d), respectively.
[5] We need not decide whether every term in TR § 21-101 should properly be considered a "transportation asset" within the meaning of the Executive Order, as there can be little dispute that the ordinary plain meaning of transportation asset would encompass a railroad station or railroad train.
[6] Many MARC trains originate or terminate outside of Maryland — i.e., West Virginia or the District of Columbia. You have not asked, and we do not address, the police powers of Transportation Authority police officers in those jurisdictions. *Page 58