751 A.2d 496

Michael POLLOCK

v.

PATUXENT INSTITUTION BOARD OF REVIEW.

No. 91, Sept. Term, 1999.

Court of Appeals of Maryland.

May 12, 2000.

Stephen Z. Meehan (David C. Wright and Joseph B. Tetrault, on brief), Chestertown, for petitioner.

Scott S. Oakley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

As of the time the record in this case closed, the petitioner, Michael Pollock (Pollock), was an inmate at the Patuxent Institution (Patuxent). Since 1991 there has been recurring litigation between Pollock and the respondent, the Patuxent Institution Board of Review (Board). The judgment now before us involves a feature of paroles from Patuxent whereby inmates may be conditionally released for a period of one year at a time, subject to annual reviews by the Board. The Board asserts that its decision not to renew Pollock's parole has

mooted Pollock's challenge to the Board's earlier attempt to revoke his parole.

## I

Patuxent is a part of the Department of Public Safety and Correctional Services (Department). Maryland Code (1957, 1997 Repl.Vol.), Art. 31B, § 2(a).[1] The purpose of Patuxent "is to provide remediation programs and services to youthful eligible persons which shall include a range of program alternatives indicated by the current state of knowledge to be appropriate and effective for the population being served." § 2(b).[2] Certain inmates of the general population of the Department, who meet eligibility criteria, may be referred to Patuxent for evaluation, examination, and possible transfer to Patuxent. §§ 8 and 9. Confinement at Patuxent offers the possibility of early release based on remediation. § 11(e).

Section 9(c) requires an individualized written remediation plan to be prepared and implemented for each eligible person. In addition, § 9(d) provides in part as follows:

"A person's status as an eligible person and his progress under his remediation plan shall be reviewed by the [Board] following a new evaluation by an evaluation team at least once a year. The [Board] shall make appropriate written

---

1. Former Article 31B was repealed and reenacted without substantive change and is now codified in Maryland Code (1999), Title 4 of the Correctional Services Article. *See* Chapter 54 of the Acts of 1999. Because at all relevant times the proceedings in the instant matter were governed by former Article 31B, reference will be made to that codification, and not to the Correctional Services Article. Further, unless otherwise noted, all statutory references are to former Article 31B.

2. With certain exceptions not relevant here, "eligible person" is defined in § 1(f)(1) to mean

"a person who (i) has been convicted of a crime and is serving a sentence of imprisonment with at least three years remaining on it, (ii) has an intellectual impairment or emotional unbalance, (iii) is likely to respond favorably to the programs and services provided at Patuxent Institution, (iv) can better respond to remediation through those programs and services than by other incarceration, and (v) meets the eligibility criteria established by the Secretary under § 8 of this article."

recommendations for the future remediation and status of the person following its review."

As an interim step toward release, the Board "may grant a parole from [Patuxent] for a period not exceeding one year" subject to certain conditions. § 11(b)(2). These are that the Board must conclude "that (i) it will not impose an unreasonable risk on society; and (ii) it will assist in the remediation of the eligible person." *Id.*

The Secretary of the Department is authorized to adopt regulations necessary to carry out the provisions of the Patuxent statute. § 4A. Among the regulations that have been adopted is one dealing with parole revocation. *See* Md. Regs. Code (COMAR) tit. 12, § 12.12.03. Before the Board may order a parole revocation a retake warrant is issued, COMAR § 12.12.12.03.A, a preliminary hearing is held before an examiner "to determine whether probable cause exists to believe that the paroled inmate violated parole," § 12.12.12.03.B, and the Board holds a revocation hearing, § 12.12.12.03.C. At both the preliminary hearing and the revocation hearing, the alleged parole violator has the right, *inter alia*, to call witnesses, to present documentary evidence, and to question adverse witnesses. § 12.12.12.03.B(2) & C(5).

Revocation of parole is distinct from revocation of a Patuxent inmate's eligible person status. Revocation of the latter is commenced by a recommendation of the treating unit. CO-MAR § 12.12.12.04B(2). That unit's report "shall confirm that the inmate no longer responds favorably to the programs and services provided at [Patuxent] and the reason that the inmate can no longer be better habilitated through these programs and services than by other incarceration." *Id.*[3]

The Department has also issued, from time to time, bulletins relating to procedures entitled "Patuxent Institution Regulations," also known as "PIRs." One of these, PIR 240–19 of

---

**3.** In the instant matter Pollock included in the joint record extract an exhibit intended to demonstrate that the Board revoked Pollock's eligible person status after the circuit court record had closed. We grant the Board's motion to strike that exhibit.

January 17, 1985, comes into play in the procedural history which we now set forth.

## II

Pollock is serving sentences of life imprisonment for first degree murder and two years consecutive for escape. He was committed to Patuxent as an eligible person in April 1980. He was paroled in August 1990, but that parole was revoked in 1991, based on a report that a urinalysis was positive for marijuana. That parole revocation was reversed by the Circuit Court for Howard County which, in turn, was affirmed by the Court of Special Appeals in 1993 in an unreported opinion. The basis for the reversal was that the Board had failed to comply with its notice provisions, as prescribed by PIR 240–19.V.C.,[4] and its hearing requirements, as mandated by PIR 240–19.V.D.[5] Although Pollock's status thereafter is not detailed in the record before us, it appears that he remained an eligible person.

Pollock was again paroled in June 1996. The order of parole specified an expiration date of May 1997. Pollock agreed to general and special conditions by signing the order of parole. The general conditions included that he would obey all laws and that he would not unlawfully possess any controlled dangerous substance.

Pollock furnished a urine specimen, as required, on May 15, 1997, at Patuxent. The laboratory reported the specimen to

---

4. PIR 240–19.V.C. states:

   "Notice to parolee—Within seven (7) working days of the conclusion of the preliminary parole revocation hearing the alleged violator shall be served with a Notice of Parole Revocation Hearing and a copy of the written Preliminary Hearing Report...."

5. PIR 240–19.V.D. states:

   "Scheduling the hearing—It shall be the duty of the preliminary hearing examiner to schedule the formal parole revocation hearing within a reasonable time from the conclusion of the preliminary hearing. In any event, the formal parole revocation hearing shall be held within ninety (90) days of the conclusion of the preliminary hearing."

be positive for marijuana and a parole revocation warrant was issued for Pollock on May 19. He was returned to Patuxent by May 22, the date on which he was served with a notice of preliminary hearing and on which the preliminary hearing was held. In the written report, signed May 28, 1997, the hearing examiner found probable cause of a parole violation.

The Board served Pollock on June 4, 1997, with notice of a revocation hearing. It commenced on June 19 and thereafter was resumed and concluded on July 17, 1997. At that hearing Pollock objected to the introduction of the urinalysis report on, generally speaking, chain of custody grounds. According to its written decision, facially dated July 18, 1997, the Board revoked Pollock's parole, found him "no longer eligible for the program," and decided "to return [him] to the Division of Correction to serve the remainder of [his] sentence."

In August 1997 Pollock petitioned the Circuit Court for Howard County for judicial review. The Administrative Procedure Act, then and now, specifically excludes the Board "when acting on a parole request" from the contested case subtitle. *See* Md.Code (1984, 1999 Repl.Vol.), § 10-203(a)(3)(x) of the State Government Article (SG). The petition for review, therefore, was founded on the common law jurisdiction of the circuit court to review an administrative action to determine whether it is arbitrary and capricious. *See Bucktail, LLC v. County Council,* 352 Md. 530, 542, 723 A.2d 440, 445 (1999); *Gisriel v. Ocean City Bd. of Sup'rs of Elections,* 345 Md. 477, 500, 693 A.2d 757, 768 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998); *Silverman v. Maryland Deposit Ins. Fund Corp.,* 317 Md. 306, 324, 563 A.2d 402, 411 (1989); *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 500–01, 331 A.2d 55, 64–65 (1975).

The hearing on Pollock's petition for review was held by the circuit court on April 2, 1998. At the hearing and in a posthearing memorandum Pollock argued, *inter alia,* that the Board violated PIR 240–19.V.C. in failing timely to serve him with the notice of the revocation hearing and that the urinaly-

sis report had been improperly admitted. At the hearing and in its memorandum the Board argued that the action was moot because Pollock's parole had expired prior to the revocation proceeding. That is to say, when the June 19, 1997 revocation hearing commenced, Pollock's one year parole that had begun on June 6, 1996, no longer existed. At the hearing before the circuit court, counsel for the Board argued that "it is also my position that for whatever reason the Board didn't know it but it all didn't matter because his parole had expired." In the alternative, the Board argued that there was substantial evidence to establish a lawful chain of custody for the urine sample.

In a reply memorandum Pollock submitted that the revocation was not moot. One of the reasons advanced was that the Board's construction of § 11(b)(2) would result in an unconstitutional denial of due process under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), discussed *infra.* Pollock submitted that "[t]he State's reading of the statute, that Patuxent can perform 'stealth' revocations of parole by simply letting the one-year term of parole expire, cannot be reconciled with *Morrissey.*"

In a memorandum and order dated April 15, 1998, the circuit court reversed "the decision of the [Board] to revoke Mr. Pollock's parole." The circuit court agreed with Pollock's procedural argument and held that the Board provided the requisite notice one day late. In its memorandum the court stated that "[t]he [Board's] failure to comply [with PIR 240–19] requires that the Court dismiss the current parole revocation charges and reverse the Board's decision." The circuit court never addressed Pollock's argument that challenged the use against him of the urinalysis report.

The habeas corpus petition that we have before us on this appeal was filed by Pollock on May 13, 1998. It was filed in the action for judicial review of the Board's parole revocation and not as a separate action, apparently on the theory that the relief sought was enforcement of the circuit court's order of reversal. The petition alleges that, in informal discussions

with the warden of Patuxent, Pollock was advised that he would be brought before the Board on May 21, 1998, for a hearing to determine whether his eligible person status should be revoked. Pollock contended that, based on the circuit court's memorandum and order of April 15, 1998, he should be restored to parole status under the same terms and conditions that theretofore applied to him.

On May 20, 1998, Pollock petitioned the circuit court to stay the hearing set for the next day. He described the imminent proceeding as an "eligible person hearing" and asserted that it would render the habeas corpus action moot. He further asserted that "[e]ssentially, [the Board] may be able to circumvent [the circuit] court's prior ruling before petitioner has a chance to be heard in court." The circuit court denied the petition for stay by an order dated May 20, entered on the margin of the request for stay and reading, "The results of any [Board] hearing will not affect the habeas corpus hearing." Whatever occurred before the Board on May 21, 1998, is not directly evidenced by any Patuxent documents in the record before us.

The circuit court held a hearing on Pollock's habeas corpus petition on June 2, 1998. It is agreed that the Board answered the petition.[6] Based on the Board's answer and its oral argument on June 2, the State's position at that time was as follows:

- Because of the one year limitation on parole from Patuxent under Article 31B, § 11(b)(2), the circuit court's order of April 15, 1998, reversing the Board's revocation of parole, did not restore Pollock to parole.

---

6. The answer is included in the joint record extract. The answer, however, is not in the original record of the Circuit Court for Howard County. The certificate of service on the record extract copy of the answer reflects that a copy was mailed to Pollock on June 1, 1998. The transcript of the June 2 hearing indicates that a copy of the answer was hand delivered to Pollock just prior to the hearing. We assume that the original of the answer was furnished to the court, but never made its way to the clerk's file.

- The circuit court's order of April 15, 1998, undermined the validity of the Board's revocation of eligible person status that was based upon the parole revocation.

- The procedure that took place on May 21, 1998, was the 1998 annual review of Pollock's status. At the May 21 annual review Pollock was "permitted to retain 'eligible person' status." At that time, "[h]owever, because of the positive urine test, the parole that had expired was not renewed and [Pollock] was referred to drug treatment within the Patuxent program." (The matters of fact set forth in this paragraph were averred in paragraph five of the Board's answer.)

- "[T]he positive urine test could be considered in conjunction with whether to grant parole for a new year or whether to refuse to renew the inmate's parole" because *"the infirmities in the parole revocation proceeding* [as determined by the circuit court's April 15, 1998 order] *related to the proceeding itself, and not the validity of the urinalysis."*

In essence, the Board contended that any challenge to the revocation determination of July 18, 1997, was moot because the Board had determined by its action on May 21, 1998, after the habeas corpus petition had been filed, that it would not renew Pollock's parole. The Board also submitted to the circuit court that the non-renewal decision was not based upon the overturned order of parole revocation; rather, it was based upon the reported analysis of the specimen taken May 15, 1997.

At the habeas corpus hearing Pollock withdrew his allegations that the Board's action on May 21, 1998, was an eligible person hearing, and he stipulated to the factual accuracy of the description of the Board's action of May 21 as set forth in paragraph five of the State's answer, namely that, the Board had decided that it would not renew Pollock's parole. But for this stipulation the evidentiary record would be bare of any description of the relevant events at Patuxent on May 21.

At the June 2 hearing Pollock again challenged the constitutionality of the Board's construction of § 11(b)(2), relying on *Morrissey*. There the Supreme Court considered whether the Fourteenth Amendment required that a state afford an individual on parole some opportunity to be heard prior to revoking parole. The Court first noted that "the full panoply of rights due a defendant . . . does not apply to parole revocations" because "the revocation of parole is not part of a criminal prosecution." 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. Nevertheless, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* The Court held that this conditional liberty interest was within the protection of the Fourteenth Amendment and that "[i]ts termination calls for some orderly process, however informal." *Id.* at 482, 92 S.Ct. at 2601, 33 L.Ed.2d at 495. Pollock essentially submitted that the non-renewal of a one year parole of a Patuxent inmate had the same effect on the inmate's constitutionally protected conditional liberty interest as would a revocation of more conventional parole, so that the parolee should be afforded the same process that is afforded when the Board seeks to revoke parole.

At the June 2 argument the circuit court astutely observed with respect to the earlier hearing in this action:

"Now, we never got to the merits. The Court declined to rule on the merits of the proposed revocation and that's one of Mr. Pollock's points in his request for judicial review was that the chain of custody relating to the urinalysis upon which they were relying was deficient or defective in some substantive way but we never got to that because the relief he wanted was a [reversal of the] revocation. He got the [reversal of the] revocation on his first question, therefore, I didn't have to answer two and three. So that remains apparently the hook that the Board of Review relied upon in the second go around."

The circuit court took the matter *sub curia.* In a written order dated June 30, 1999, the court denied the petition for

habeas corpus relief. Finding the language of § 11(b)(2) to be clear and unambiguous, the court held that "[t]he 1996 parole status obviously expired whether or not it was revoked. Consequently, there is no parole to which Mr. Pollock could be restored."

Thereafter, Pollock noted an appeal to the Court of Special Appeals. That court, in an unreported opinion, affirmed the circuit court. The Court of Special Appeals reasoned that the General Assembly had properly distinguished between persons paroled from Patuxent and those paroled from the " 'general population' " of the Division of Correction. The court held that "[a] person paroled from Patuxent does not have a constitutional right to remain on parole until that parole is revoked as a result of a 'due process' revocation proceeding."

We granted Pollock's petition for certiorari, 356 Md. 177, 738 A.2d 854 (1999), in which the question presented is, "May Patuxent reincarcerate a parolee whose parole has not been revoked?"

### III

In their briefs in this Court the parties debate the reach of *Morrissey* and the nature and extent of the liberty interest, if any, enjoyed by a Patuxent parolee, particularly following one year from the order of parole. At oral argument in this Court, however, this case underwent a further evolution which makes it unnecessary for us to decide the constitutional issue. The rule of appellate practice on which we rely was recently restated by this Court in *Professional Staff Nurses Ass'n v. Dimensions Health Corp.*, 346 Md. 132, 695 A.2d 158 (1997):

" '[T]his Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground.' *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993) (citing numerous cases). The appellate policy of avoiding unnecessary decision of constitutional issues gives rise to one of 'a very limited number of circumstances [that]

have been treated as "extraordinary" and thus within the exceptions to the requirement that an issue be raised in a certiorari petition, cross-petition, or order by the Court.' *State v. Broberg,* 342 Md. 544, 573, 677 A.2d 602, 616 (1996) (Eldridge, J., dissenting with Murphy, C.J. and Bell, J.)."

*Id.* at 138–39, 695 A.2d at 161 (alterations in original).

At oral argument before this Court the Board disclaimed any unbridled discretion to renew or not to renew when a Patuxent parole automatically expires at the end of a one year cycle. Instead, the Board's position is that the non-renewal of a parole is governed by the same statutory standards that govern the grant of parole. Those standards are found in § 11(b)(2), reading:

"If the [Board] concludes that (i) it will not impose an unreasonable risk on society; and (ii) it will assist in the remediation of the eligible person, it may grant a parole from [Patuxent] for a period not exceeding one year."

The Board further acknowledged to us that, when it applies these standards on annual review, a paroled eligible person enjoys notice of the ground for proposed non-renewal and a meaningful opportunity to refute the evidence on which the Board relies to support that ground. The following colloquy took place:

"[The Court]: [I]f, for example, the Board were to say, 'Well, you've been, you haven't been drug free. That's why we're—'

"[Board Counsel]: Right. Here's this urinalysis test.

"[The Court]: Would the inmate have the opportunity to refute that?

"[Board Counsel]: ... Yes. To the extent that the Board points to a discrete item of evidence as the basis for its decision, yes.

"[The Court]: So, are we then saying the only difference between the non-renewal and the revocation is the presence of counsel?

"[Board Counsel]: So far, yes."

For the purposes of the case before us, it makes no difference whether the recognized right of the parolee to refute the evidence relied upon for non-renewal by the Board is based on an administrative construction of the statute or whether it represents a practice based on legal advice which counsel, in turn, predicated on constitutional considerations. The point here is that, in the same civil action that was initiated as one for judicial review of the revocation, Pollock has never obtained judicial review of the use of the May 1997 report of urinalysis either as the basis for the original revocation or as the basis for the May 21, 1998 non-renewal on annual review. Pollock is entitled to common law judicial review of whether the Board acted arbitrarily and capriciously in relying on the urinalysis report in not renewing his parole to the same extent that Pollock was entitled to common law judicial review of the Board's decision to revoke his parole based on that same disputed urinalysis report.

In response, the Board contends that the issues of whether the Board's non-renewal decision was supported by substantial evidence, or whether the Board made an error of law, were not raised in the habeas corpus petition. Casting the same argument in a different light, the Board submits that any judicial review of the non-renewal decision should be initiated by a petition for judicial review of that decision. Nevertheless, under our jurisprudence concerning avoiding the decision of constitutional issues, whether Pollock may obtain judicial review in the present proceeding of the non-renewal decision is an issue that is before us, for a number of reasons.

The relief under a petition for habeas corpus is not limited to the release of the prisoner. *Gluckstern v. Sutton,* 319 Md. 634, 663, 574 A.2d 898, 912 (1990), *cert. denied, Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). "Habeas corpus actions may be maintained where the relief available is the ordering of a proceeding or hearing which may lead to the petitioner's release." *Lomax v. Warden, Maryland Correctional Training Ctr.,* 356 Md. 569, 575, 741 A.2d 476, 479 (1999). Thus, in *Gluckstern,*

where an inmate at Patuxent was denied parole, as recommended by the Board, because of the *ex post facto* application of a statute, it was appropriate for a circuit court, on habeas corpus, to order a new parole hearing. *Gluckstern,* 319 Md. at 664, 574 A.2d at 912.

Here, justice requires utilizing the habeas corpus proceeding to obtain judicial review of the Board's administrative action in not renewing parole. Although the present proceeding was initiated as a petition for habeas corpus relief directing that Pollock be paroled, the Board injected into the present proceeding a defense based on facts that arose after the proceeding was initiated. It is the Board's defense of mootness that opens the door for Pollock in this proceeding to obtain judicial review of the administrative decision. The Board cannot defend on the basis of the non-renewal decision and at the same time prevent Pollock from attempting to demonstrate that the decision was arbitrary and capricious. We do not deal here with a special statutory form of review that is intended to be exclusive. Compare *Prince George's County v. Blumberg,* 288 Md. 275, 283–84, 418 A.2d 1155, 1160 (1980) (common law judicial review under *Gould* generally not available where statutory remedy is exclusive), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *State Dep't of Assessments & Taxation v. Clark,* 281 Md. 385, 402, 380 A.2d 28, 38 (1977) (same).

Further, it is the Board's error in violating the notice requirements of PIR 240–19.V.C. that resulted in the reversal by the circuit court of the July 18, 1997 revocation decision, without reaching the other issues raised by Pollock, including whether the urinalysis report was admissible. The Board cannot expect to gain an advantage from its procedural error.

Consequently, this action should be remanded to the Circuit Court for Howard County for the purpose of conducting a judicial review of the administrative decision not to renew Pollock's parole.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH

INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND TO REMAND THIS CASE TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.