REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1950

September Term, 2012

---

JOSEPH SIMMS

v.

BOBBY SHEARIN, WARDEN

---

Meredith,
Graeff,
Leahy,

JJ.

---

Opinion by Leahy, J.

---

Filed: February 24, 2015

Approximately ten years after his 1998 conviction of two first-degree murders, Appellant Joseph Simms filed a *pro se* petition seeking additional DNA testing of clothing introduced at his trial pursuant to Maryland's post-conviction DNA testing statute—Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article ("CP") § 8-201—in the Circuit Court for Baltimore City.[1] Although the court ultimately granted this petition, Appellant's claim that additional DNA testing would prove his innocence could not be substantiated because the clothing had been destroyed by the Baltimore City Police Department in October 2000 after his direct appeal was final pursuant to then-applicable protocols.

The statute pursuant to which Appellant sought additional DNA testing, CP § 8-201, establishes procedures to challenge whether the State intentionally or willfully destroyed evidence that the State had reason to know contained DNA material.[2] Appellant, however, filed the underlying action separately as a petition for writ of habeas corpus, asserting that he was denied due process of law by the State's destruction of the

---

[1] Unless otherwise indicated, all statutory references to CP § 8-201 hereinafter are to the 2008 replacement volume as well as the 2014 supplement, which contains amendments to CP § 8-201 pertinent to this case that became effective on January 1, 2009, before Appellant filed the underlying habeas corpus action. *See, e.g., Gregg v. State*, 409 Md. 698, 714-16 (2009) (establishing that although statutes are normally presumed to operate prospectively, statutes like CP § 8-201 that have a remedial effect and amendments thereto that only provide procedural changes may be given retrospective application); *see also Thompson v. State*, 411 Md. 664, 681 (2009) (giving the 2008 amendments to CP § 8-201 that broadened the right to appeal and provided the standard for new trial retrospective application).

[2] It appears from Appellant's case history that he subsequently obtained a hearing under CP § 8-201 regarding the destruction of his DNA evidence, and his appeal from the court's subsequent denial of relief is currently pending before the Court of Appeals.

evidence without notice. The circuit court denied the petition, and Appellant filed a timely appeal.

In Maryland, an appeal may not be taken from a disposition of a petition for writ of habeas corpus unless authorized by one of only four statutes, including CP § 7-107, a provision in the Uniform Post Conviction Procedure Act ("UPPA"), which is most relevant in this case. CP § 7-107 permits an appeal from habeas corpus disposition when the petition is sought for a purpose other than to challenge the legality of the conviction or sentence. The Court of Appeals has further held that an appeal from a habeas corpus petition lies where the UPPA does not provide a remedy. This prompts the entangled question of whether a habeas petition challenging the State's post-trial destruction of DNA evidence may be appealed under CP § 7-107, particularly when the General Assembly enacted CP § 8-201 to govern and address this scenario. Because Appellant's petition seeks to challenge the legality of his conviction, and because CP § 8-201 provides appeal rights commensurate with habeas relief when DNA evidence is destroyed post-trial, we must dismiss this appeal.

## FACTS AND PROCEEDINGS

### A. Trial

In 1998, Appellant was tried for the double homicide of Peter W. Williams and Belinda M. Baynor in the Circuit Court for Baltimore City. At trial, the State produced evidence that Appellant was Ms. Baynor's former boyfriend and that Ms. Baynor had been at the home of Mr. Williams, a family friend, on December 12, 1995. During an

2

interview with police, Appellant admitted that he went to Mr. Williams's residence that evening and that he and Ms. Baynor got into an argument. He also stated that he avoided encountering Mr. Williams while there because Mr. Williams had pulled a gun on him during a previous argument. The following morning, on December 13, the bodies of Ms. Baynor and Mr. Williams were found inside Mr. Williams's house. The residence showed signs of forced entry, and both victims had suffered fatal stab wounds. Appellant was at the crime scene when police responded. He was taken to the police station for questioning, where both the hair on his hand and his right hand tested positive for the presence of blood.

The State also introduced several items of clothing—including a jacket, boots, socks, and a towel—that were found outside in trash bags close to Appellant's aunt's house. The aunt testified that Appellant had arrived at her home, "nervous . . . shaking," during the early morning hours of December 13 asking to stay at her house and that she observed Appellant wearing the clothes found in the trash bag on December 12. One forensic chemist testified at trial that she could not exclude Ms. Baynor as a DNA contributor to the blood found on the left-front jacket and the right shoe, and another forensic chemist testified that the DNA profiles obtained from the blood sample taken from the right-hand sleeve of the jacket matched Mr. Williams' blood sample and that the DNA profiles obtained from the left-hand sleeve matched both Mr. Williams and Ms. Baynor's blood samples.

The jury ultimately convicted Appellant of first-degree murder of both victims and

3

related weapon offenses on April 6, 1998. The circuit court imposed two consecutive sentences of life imprisonment without the possibility of parole, and this Court affirmed Appellant's convictions and sentences in an unreported opinion. *Simms v. State*, No. 760, Sept. Term 1998 (filed April 28, 1999). Appellant later filed a post-conviction petition, an application for leave to appeal the denial of post-conviction relief, and a motion to reopen his post-conviction proceeding, which were all denied.

### B. *Petition for Post-Conviction DNA Testing and Related Proceedings*

On January 7, 2008, Appellant filed a *pro se* "motion for new trial and release of evidence of DNA testing," contending that he had a degenerative skin disease on his legs and that, if he was the true perpetrator, his skin cells would have been on the socks and other items. He alleged that the new short tandem repeat ("STR") method of DNA testing would prove this contention and establish his innocence. The circuit court summarily denied this motion without a hearing. Appellant appealed to this Court, and we transferred the case to the Court of Appeals pursuant to CP § 8-201 and Maryland Rule 8-132.[3] The Court of Appeals held that Appellant's *pro se* motion implicated the post-conviction DNA statute CP § 8-201 and that, when construed liberally, the motion satisfied the pleading requirements of CP § 8-201. *Simms v. State*, 409 Md. 722, 731-32

---

[3]     Section 8-201(k)(6) provides for an appeal of an order entered under that section to the Court of Appeals. *See also Arrington v. State*, 411 Md. 524, 544 (2009) (concluding that subsection (k)(6) provides "a direct right of appeal to [the Court of Appeals], which does not require a litigant to petition for *certiorari*"); Maryland Rule 8-132 (providing for a transfer of an appeal improperly taken).

4

(2009). Accordingly, the Court vacated the judgment and remanded the case with instructions for the court to order the State to file an answer to Appellant's petition. *Id.* at 734-35.

The circuit court issued an order to that effect on September 14, 2009, and the court subsequently held a hearing on July 16, 2010, ultimately ordering that DNA testing be conducted. On August 2, 2010, Appellant received a letter from his attorney at the University of Baltimore's Clinical Law Offices informing him that the evidence in his case had been sent to the lab for DNA testing.

Approximately seven months later, however, on March 15, 2011, Appellant's attorney sent a letter to the circuit court with an update on the status of the DNA testing. The letter stated:

> In a letter dated July 21, 2010, I informed Your Honor, that the cuttings from socks had been received by The Bode Technology Group (TBTG) in Lorton, Virginia. TBTG completed DNA testing on the cuttings from the socks in October 2010. After examining the DNA results and consulting with the Baltimore City Crime Laboratory, it was determined that the cuttings came from the incorrect pair of socks. *A further search determined that the socks Mr. Simms requested DNA testing for had been destroyed on October 23, 2000.*

(Emphasis added). The letter advised that the State had filed (1) an affidavit from Sergeant Larry Bazzle—Custodian of Records for Evidence Control Unit Policies, Procedures and Protocols—confirming that the items were destroyed on October 23, 2000 pursuant to the then-applicable protocols; and (2) the evidence control unit's chain of custody reports for the items, which reflected destruction of the items. Appellant's

attorney mailed a similar letter to Appellant on March 16, 2011, advising him of the destruction of the evidence and notifying him that "there is nothing further that can be done in your case regarding DNA." On September 28, 2011, the case was closed.

## C. *Petition for Writ of Habeas Corpus*

On August 1, 2011, Appellant filed a *pro se* petition for writ of habeas corpus, arguing that he was denied due process and equal protection of the law by the State's destruction of the DNA evidence admitted at trial, which, if tested for DNA under the new STR testing method, would have exonerated him from his wrongful conviction. Specifically, Appellant contended:

> This Petitioner has been denied his only opportunity to have this evidence tested for DNA that would exonerate him from this wrongful conviction after years of litigation in the Maryland Court system. The destruction of this evidence has "Prejudice[d]" this Petitioner when "identity" was the main issue at trial;. [sic] The Petitioner sought for years to prove that the clothing found outside his Aunt's House in a trashbag did not belong to him, and was never worn by him. The clothing that the State alleged was worn by the perpetrator of the crime.
>
> Petitioner has always had a degenerative skin disease on both legs which cause's [sic] his skin to flake off, and crack that would cause slight bleeding around his ankles sometimes, that is why DNA testing was critical. The new "STR DNA Testing" of the material collected at the crime scene and clothing found in the trash bag would have supported Petitioner's contention of innocence and that someone other then [sic] this Petitioner murdered the deceased.

Citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), Appellant maintained that the State destroyed this evidence in bad faith, specifically pointing to the timing on the chain of custody report, which indicated that the State destroyed the DNA evidence while his petition for post-conviction relief was pending. The State, according to Appellant, also

6

destroyed the evidence without notifying Appellant, his attorney, or the court.  Appellant also maintained "his actual innocence of the crime he was wrongfully convicted of by a jury" and argued that had the DNA evidence not been destroyed, the DNA testing would have demonstrated that his conviction was wrongful.

On August 18, 2011, the circuit court issued an order that the State show cause why the writ should not issue and to file a response.  The State filed an answer to the order to show cause on October 5, 2011, arguing that questions of guilt or innocence cannot be raised in a habeas proceeding; that the State had no duty to preserve the evidence in accordance with protocols applicable before 2001; and that, in any event, the destruction of only "potentially useful" evidence cannot qualify as destruction of evidence in bad faith.  Without holding a hearing, on October 12, 2012, the circuit court filed an order and accompanying memorandum denying Appellant's petition for writ of habeas corpus.

In its memorandum, the court first concluded that a claim of actual innocence cannot be raised in a petition for writ of habeas corpus and declined to address this contention.  The court then concluded that Appellant "failed to show that the State acted in bad faith in failing to preserve potentially useful physical evidence related to [his] criminal case" and that his "due process rights have not been violated under the standard set forth by *Youngblood*, 488 U.S. 51 (1988)."  This appeal ensued.[4]  Appellant presents

---

[4]    On May 29, 2013, this Court transferred the instant appeal to the Court of Appeals (continued . . . )

7

one issue for our review: "Whether the trial court erred when it denied Writ of Habeas Corpus, ruling that Appellant was not denied due process rights by the State's destruction of evidence that was court-ordered for DNA testing."

## DISCUSSION

The State has filed a motion to dismiss this appeal, arguing that Appellant does not have a right to appeal from the circuit court's denial of his petition for writ of habeas corpus.[5] Appellant counters that although his pleading was captioned as a "writ for habeas corpus," this Court should liberally construe his pleading as a petition for writ of actual innocence. We agree with the State that Appellant does not have a right to appeal from the habeas corpus petition filed in this case and that the petition cannot be liberally construed as one for writ of actual innocence as to permit our review of the merits.

---

pursuant to Maryland Rule 8-132 believing the appeal to fall under CP § 8-201 because it sought relief following the July 24, 2009, remand. The Office of the Public Defender thereafter entered an appearance on Appellant's behalf (although not formally filed until March 27, 2014). On December 12, 2013, counsel for both parties filed a joint motion to transfer the case back to this Court, agreeing that the issues raised in the habeas corpus petition relate to due process and actual innocence and do not fall under CP § 8-201. On December 12, 2013, the Court of Appeals transferred the instant appeal back to this Court.

[5]     The State also argued that this Court could dismiss the instant appeal due to Appellant's failure to provide an adequate record, as the transcripts were not included and no record extract was prepared. On April 4, 2014, Appellant filed a motion to correct the record to include the transcripts, which was unopposed and granted by this Court on April 7, 2014. Therefore, we will not dismiss the appeal on the ground that Appellant failed to provide an adequate record.

### A. *Limited Right to Appeal the Denial of a Petition for Writ of Habeas Corpus*

A writ of habeas corpus—meaning "that you have the body" in Latin—is "employed [to cause the detainer] to bring a person before a court, most frequently to ensure that the person's imprisonment or detention is not illegal." Black's Law Dictionary (9th ed. 2009). This common law writ was codified in 1809 and was later enveloped by the protections of the Maryland Constitution in 1867. *Olewiler v. Brady*, 185 Md. 341, 345-46 (1945) (citations omitted). Specifically, the Maryland Constitution prohibits the General Assembly from passing a law "suspending the privilege of the Writ of Habeas Corpus." Md. Const. art. III, § 55.

Today, the Maryland Code provides that any "person committed, detained, confined, or restrained from his lawful liberty within the State for an alleged offense or under any color or pretense or any person in his behalf, may petition for the writ of habeas corpus to end the cause of the commitment, detainer, confinement, or restraint may be inquired into." Md. Code Ann. (1974, 2013 Repl. Vol.), Cts. & Jud. Proc. ("CJP"), § 3-702(a). The circuit court then must immediately, upon production of the petitioner and the cause of his detention, "inquire into the legality and propriety of the confinement or detention" and release or discharge the petitioner if the court finds that "the person is detained without legal warrant or authority." CJP § 3-702(a)-(b); *see also Pollock v. Patuxent Inst. Bd. of Review*, 358 Md. 656, 668 (2000) (explaining that "[t]he relief under a petition for habeas corpus is not limited to the release" and that petitions

9

may be maintained if relief includes "the ordering of a proceeding or hearing which may lead to the petitioner's release" (citations and internal quotation marks omitted)).

Although the right to seek a writ of habeas corpus is constitutionally protected, the right to an *appeal* from the disposition of the habeas corpus petition is not. Indeed, the Court of Appeals has "consistently held that the statutory provisions like . . . [CJP] § 12-301 . . . generally authorizing an 'appeal from a final judgment entered in a civil or criminal case,' do not apply to habeas corpus cases." *Gluckstern v. Sutton*, 319 Md. 634, 652, *cert. denied sub nom Henneberry v. Sutton,* 498 U.S. 950 (1990). "An appeal may be taken from a final order in a habeas corpus case only where specifically authorized by statute." *Id.* (citations omitted). The Court has identified four such statutes: (1) CP § 9-110, which authorizes appeals in extradition cases; (2) CJP § 3-707, which authorizes an application for leave to appeal in cases involving right to bail or allegedly excessive bail; (3) CJP § 3-706, which provides for an appeal if a court issued a writ of habeas corpus based on the unconstitutionality of the law under which the petitioner was convicted; and (4) CP § 7-107,[6] a provision in the UPPA, which permits an appeal if the writ was sought under CP § 9-110 or for a purpose other than to challenge the legality of a conviction or sentence. *Id.* at 652-53. Based on the legislative history of the UPPA discussed below, the Court of Appeals has further concluded that the fourth provision, CP § 7-107, permits appeals where the UPPA does not otherwise provide a remedy. *Id.* at 662.

---

[6] This provision was formerly Article 27, § 645A of the Maryland Post Conviction Procedure Act.

The instant case involves neither extradition under CP § 9-110, right to bail or allegedly excessive bail under CJP § 3-707, nor the unconstitutionality of the law pursuant to which Appellant was convicted under CJP § 3-706. The only possible statute under which we could entertain this appeal is CP § 7-107; therefore, we narrow our discussion accordingly.

i. Legislative History of the UPPA

In *Gluckstern v. Sutton*, the Court of Appeals undertook a comprehensive review of the legislative history of the UPPA and its relation to habeas corpus:

> In 1958 the General Assembly enacted the Post Conviction Procedure Act, Ch. 44 of the Acts of 1958, Code (1957, 1963 Cum. Supp.), Art. 27, § 645A *et seq.* That enactment, for the first time, created a statutory remedy under which a prisoner could collaterally challenge[7] the conviction and sentence, or defective delinquency determination, which led to his incarceration. The Post Conviction Procedure Act also provided that any party aggrieved by the final trial court order in a proceeding under that Act could file an application for leave to appeal. Code (1957, 1963 Cum.Supp.), Art. 27, § 645-I. *The purpose of the Post Conviction Procedure Act was to create a simple statutory procedure, in place of the common law habeas corpus and coram nobis remedies, for collateral attacks upon criminal convictions and sentences.* Although for constitutional reasons the General Assembly did not restrict the authority of judges to issue writs of habeas corpus, it did in the Post Conviction Procedure Act legislate with regard to appeals in habeas corpus cases.

*Gluckstern*, 319 Md. at 658 (emphasis added) (footnote omitted and internal citations omitted). In other words, "[t]he purpose of the UPPA was to streamline 'into one simple

---

[7] "A collateral challenge, by its very nature, is a separate and distinct civil procedure by which a defendant may challenge his or her conviction, sentence, or imprisonment." *Ruby v. State*, 353 Md. 100, 107 (1999).

statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are . . . present[ly] available for challenging the validity of a sentence.'" *Douglas v. State*, 423 Md. 156, 175 (2011) (alteration in original) (quoting *State v. Zimmerman*, 261 Md. 11, 24 (1971)). Concomitantly, the UPPA restricted the once broad right to file an application for leave to appeal in habeas corpus cases. *Gluckstern*, 319 Md. at 656-58. The statute's original language "could have been construed to have abolished habeas corpus appeals only where the purpose of the habeas corpus proceeding was to challenge the original criminal conviction or sentence, or defective delinquency proceeding, which had let to the incarceration":

> Hereafter no appeals to the Court of Appeals of Maryland in habeas corpus or coram nobis cases, or from other common law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained, except appeals in such cases pending in the Court of Appeals on June 1, 1958, shall be processed in due course.

*Id.* at 659 (quoting Code (1957, 1963 Cum. Supp.), Art. 27, § 645A(b)) (internal quotation marks omitted). Subsequent amendments to the statute and interpretations by the Court of Appeals, however, further qualified the right to appeal from a habeas corpus petition.

ii. Interpretation and Application of CP § 7-107

The current reiteration of CP § 7-107 finds its derivation in the 1965 amendment to the UPPA whereby the General Assembly "enumerate[d] certain classes of habeas corpus cases in which an appeal to the Court of Appeals may be taken." *Gluckstern*, 319

12

Md. at 662; *see also Barr v. State,* 101 Md. App. 681, 685 (1994) (stating that with the 1965 amendment, "the Legislature clarified that its abrogation of the right to seek appellate review from the denial of *habeas corpus* applied only where the writ was sought to challenge the legality of a conviction or sentence of death or imprisonment" (citation omitted)).  Section 7-107(b), as it now reads, provides:

> (b)(1) In a case in which a person challenges the validity of confinement under a sentence of imprisonment by seeking the writ of habeas corpus or the writ of coram nobis or by invoking a common law or statutory remedy other than this title, a person may not appeal to the Court of Appeals or the Court of Special Appeals.
>
> (2)  This subtitle does not bar an appeal to the Court of Special Appeals:
>
> (i) in a habeas corpus proceeding begun under § 9-110 of this article; or
>
> (ii) **in any other proceeding in which a writ of habeas corpus is sought for a purpose other than to challenge the legality of a conviction of a crime or sentence of imprisonment for the conviction of the crime**, including confinement as a result of a proceeding under Title 4 of the Correctional Services Article.

(Emphasis added).

The Court of Appeals has construed the statute to "grant[] a right of appeal in a habeas corpus case not involving a challenge to the criminal conviction and sentence or the Art. 31B proceeding which led to the prisoner's confinement."  *Gluckstern*, 319 Md. at 662; *accord Skok v. State*, 361 Md. 52, 63 (2000) (stating that subsection (b)(2)(ii) "implicitly precludes appeals in [habeas corpus] cases challenging the legality of convictions").  Moreover, based on the legislative history of the UPPA and its intention

13

of substituting the remedies afforded in habeas corpus actions, the Court has further instructed that "[i]n situations where the Post Conviction Procedure Act d[oes] not provide a remedy, and thus [i]s not a substitute for habeas corpus, the . . . statute provide[s] no reason for restricting appeals in habeas corpus cases." *Gluckstern*, 319 Md. at 662.[8]

Applying CP § 7-107, Maryland appellate courts have entertained appeals from rulings on habeas corpus petitions only when the petitioner challenged the legality of confinement based on collateral post-trial influences and not the legality of the underlying conviction or sentence, and where the UPPA did not otherwise provide a remedy. *Compare Green v. Hutchinson*, 158 Md. App. 168, 174-75 (2004) (refusing to permit an appeal from a court's denial of inmate's habeas corpus petition when the inmate alleged ineffective assistance of counsel, errors in admission of evidence, and improprieties relating to jury instructions and the counts submitted to the jury, as these claims "went directly to the legality of [inmate's] conviction") *with Md. Corr. Inst. v. Lee*, 362 Md. 502, 515 (2001) (permitting the prison's appeal from the court's grant of inmate's habeas corpus petition because the inmate "patently" challenged the prison's actions in implementing its policies with respect to her confinement, not the legality of her sentence), *Lomax v. Warden, Md. Corr. Training Ctr.*, 120 Md. App. 314, 323 (1998)

---

[8] In fact, Maryland Rule 15-304 permits a court to treat a petition for writ of habeas corpus as a petition under the UPPA "if the individual confined consents in writing or on the record and the judge is satisfied that the post conviction proceeding is adequate to test the legality of the confinement."

(permitting the inmate's appeal from the court's denial of his habeas corpus petition because the inmate challenged the constitutionality of the Governor's pronouncement regarding parole for inmates sentenced to life imprisonment, not the legality of his sentence), *Frost v. State*, 336 Md. 125, 132 n.5 (1994) (permitting inmates' appeal of the court's denial of their habeas corpus petitions because they challenged the Parole Commissioner's authority to rescind diminution credits, not the legality of their convictions or sentences), *and Gluckstern,* 319 Md. at 662-63 (permitting the Patuxent Institution's appeal from the court's grant of inmate's habeas corpus petition because the inmate claimed that the requirement of gubernatorial approval of his parole violated ex post facto clauses of the Maryland Declaration of Rights and the United States Constitution, not the legality of his sentence).

### iii. CP § 7-107 Does Not Grant Appellant a Right to Appeal

Based on the foregoing, we conclude that CP § 7-107 does not grant Appellant a right to appeal his habeas corpus petition because (1) he did not file his petition for writ of habeas corpus for a purpose other than to challenge the legality of his conviction, and (2) CP § 8-201 establishes the right for post-conviction relief if warranted and is procedurally linked to the UPPA.

First, unlike *Lee*, *Lomax*, and *Gluckstern*, cases in which appeals were permitted under CP § 7-107 where the habeas petitions did not attack the legality of a conviction or sentence, Appellant does not contend that his confinement or its duration is illegal for some collateral reason.  Rather, Appellant asserts that the destruction of the DNA

15

evidence [after his direct appeal was final] rendered him unable to challenge the legality of his *conviction* through post-trial collateral attack. As averred by Appellant in his petition, if the State had not destroyed the evidence at issue, DNA testing would have "exonerate[d] him from this wrongful conviction after years of litigation." In our view, the essence of these assertions speaks to Appellant's desire—and his corresponding inability—to challenge the legality of his convictions, not, for example, the terms of his confinement. Therefore, Appellant did not seek a writ of habeas corpus for a purpose "other than to challenge the legality of a conviction of a crime or sentence" as required for an appeal to be permitted under CP § 7-107.

Second, CP § 8-201—the post-conviction DNA testing statute—shares the UPPA's purpose in affording post-trial collateral challenge to convictions and, in its procedures governing DNA testing and appeals therefrom, CP § 8-201 is sufficiently linked to the UPPA. We explain.

Before the turn of the century, Maryland law did not provide an avenue by which individuals could seek DNA testing of evidence after conviction. *See* Dep't of Legislative Servs., Fiscal Note S.B. 15, at 2 (2001) (providing a fiscal review for the initial Senate Bill introducing the post-conviction DNA testing statute).[9] Indeed, the Supreme Court has remarked that "[t]he dilemma [of] . . . how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of

---

[9] The Fiscal Note itself includes a footer designating every page as "page 5"; accordingly, our page references relate to the page numbers of the hard copy.

criminal justice" is a "task belong[ing] primarily to the legislature." *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62-63 (2009). In 2001, the Maryland General Assembly enacted CP § 8-201 to enable "persons convicted of serious crimes to pursue DNA testing of physical evidence, in the possession of the State, that might prove exculpatory or mitigating." *Gregg v. State*, 409 Md. 698, 701 (2009). Since then, CP § 8-201(a)(1) has permitted such persons to file a petition "for DNA testing of scientific identification evidence that the State possesses . . . and that is related to the judgment of conviction." A court is required to order DNA testing if it finds that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing" and that "the requested DNA test employs a method of testing generally accepted within the relevant scientific community." CP § 8-201(d)(i)-(ii). The statute also established that the State is required to preserve evidence related to a qualifying crime that the State "has reason to know contains DNA material." § 8-201(j)(1). The Court of Appeals has clarified that this requirement applies prospectively from the date of § 8-201's enactment (October 1, 2001), not retrospectively. *Washington v. State,* 424 Md. 632, 666-67 (2012).[10]

_____

[10]    This holding concerned only the State's duty to preserve scientific identification evidence, as the Court specifically stated that it "has no bearing on our previous case law construing other provisions of the statute as having retroactive effect." *Washington*, 424 Md. at 664 n.10; *see supra* footnote 1.

17

Notably, in 2008, the General Assembly amended the statute to provide procedures for relief, if warranted, for the State's failure to produce scientific DNA identification evidence after a court ordered testing of that evidence. *See* 2008 Laws of Maryland, ch. 337 (S.B. 211). If the requested evidence was lost or destroyed after the enactment of CP § 8-201, the court "shall hold a hearing to determine whether the failure to produce evidence was the result of intentional and willful destruction." CP § 8-201(j)(3)(i); *Washington,* 424 Md. at 663.[11] If the court finds that the State intentionally and willfully destroyed the evidence, the court shall order a post-conviction hearing to be conducted, and the post-conviction court holding that hearing must "infer that the results of the postconviction DNA testing would have been favorable to the petitioner." CP § 8-201(j)(3)(ii)(1)-(2). Under § 8-201(k)(6), petitioners are permitted to take a direct appeal of any order issued pursuant to § 8-201 to the Court of Appeals. *Arrington v. State*, 411 Md. 524, 544 (2009).

It is apparent from the plain language of the statute that, although not technically part of the UPPA, CP § 8-201 shares its purpose. Like the remedies and processes set forth in the UPPA, CP § 8-201 provides an additional way to challenge a conviction collaterally in a manner beyond usual trial review. Moreover, CP § 8-201 links directly

---

[11]     The Court of Appeals has had several occasions to opine on the State's inability to locate or destruction of DNA evidence under § 8-201. *See Washington v. State,* 424 Md. 632 (2012); *Blake v. State*, 418 Md. 445 (2011) (*Blake II*); *Arey v. State*, 422 Md. 328 (2011) (*Arey II*); *Horton v. State*, 412 Md. 1 (2009); *Blake v. State*, 395 Md. 213 (2006) (*Blake I*); *Arey v. State*, 400 Md. 491 (2007) (*Arey I*).

18

to the UPPA in that it directs post-conviction DNA testing cases proceed under the UPPA. First, upon favorable DNA testing results, a court has the option of opening or reopening a post-conviction proceeding under the UPPA.[12] Second, if the court finds after a hearing that the State intentionally and willfully destroyed a petitioner's DNA evidence, the court is required to open a post-conviction proceeding under the UPPA. CP § 8-201(j)(3). *See*, *e.g.*, *Arrington*, *supra*, 411 Md. at 545 (concluding that when a post-conviction proceeding is reopened pursuant to CP § 8-201, the UPPA's waiver provisions apply to that proceeding); *Hawes v. State*, 216 Md. App. 105, 129 (2014) (concluding that CP § 8-201 is "tied" to the UPPA, because "it requires the circuit court to initiate a postconviction proceeding or reopen a prior postconviction proceeding when DNA testing of scientific identification evidence is favorable to the petitioner" and, accordingly "the [UPPA] applies [to a postconviction proceeding initiated under § 8-201], including

---

[12] We clarify that our conclusion that the UPPA and CP § 8-201 are "linked" is *solely* in the context of determining whether CP § 7-107 grants a right to appeal from a denial of a habeas corpus petition seeking relief from the State's post-trial destruction of his or her DNA evidence. Indeed, the Court of Appeals has recognized that in other contexts, the UPPA and CP § 8-201 must be read separately. For example, in *Gregg v. State*, the Court concluded that the procedural default provisions of the UPPA do not apply to § 8-201 by relying on the language of § 8-201(b)—that a petition for DNA testing may be brought "notwithstanding any other law governing postconviction relief." 409 Md. 698, 716 (2009). *Gregg* stands for the proposition that the UPPA cannot bar review of the merits *under § 8-201*, whereas our holding stands for the proposition that UPPA's § 7-107 bars an *appeal* from a *habeas corpus petition* when the petitioner challenges post-trial destruction of DNA evidence.

19

the final adjudication and waiver provisions of the [UPPA]").[13]

To summarize, Appellant has availed himself of the right to petition for post-trial DNA testing under CP § 8-201, which also provides the avenue for challenging the State's inability to locate the evidence or its destruction of the evidence. Although these procedures may not provide relief to all petitioners,[14] certainly the right to post-trial DNA testing and corresponding right to appeal serves as a sufficient alternative to habeas relief.

We recognize Appellant's insistence that his habeas corpus claims also relate to his constitutional right to due process. In *District Attorney's Office for Third Judicial District v. Osborne*, the Supreme Court explained that individuals may have a liberty interest under state law to demonstrate their innocence with new evidence like DNA testing. 557 U.S. 52, 68-69 (2009). However, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests [protected by due process] as a free

---

[13] By contrast, Maryland courts have considered a petition for writ of actual innocence to be separate from the UPPA, as it is a part of the "usual procedures and process of review." *See Douglas v. State*, 423 Md. 156, 177 (2011) (concluding that § 8-301, which governs petitions for writs of actual innocence, is separate from the UPPA); *accord Hawes*, 216 Md. App. at 129 (contrasting § 8-301, the provision governing a petition for writ of actual innocence, and § 8-201, the provision governing post-conviction DNA testing, and emphasizing the Court's decision in *Douglas* that § 8-301 "creates a procedure and affords remedies wholly separate and distinct from the UPPA").

[14] Because the State's statutory duty to preserve evidence is given prospective effect, *Washington*, *supra*, 424 Md. at 663, Appellant will have to demonstrate why he is entitled to relief under § 8-201(j) if the evidence was destroyed prior to the statute's enactment. *Washington*, *supra*, 424 Md. at 663. Important for the purposes of this case, however, is that Appellant would still have a right to appeal that conclusion under § 8-201 to the Court of Appeals. *Washington*, *supra*, 424 Md. at 666-67.

man[,]" because after a valid conviction, the presumption of innocence afforded during trial disappears and the individual "has been constitutionally deprived of his liberty." *Id.* at 68-69 (citation and internal quotation marks omitted). Given this difference between pre-conviction and post-conviction status, the Court recognized that an individual's interest in post-conviction relief is limited and that states must have flexibility in establishing appropriate post-conviction procedures. *Id.* at 69. The question under due process thereby becomes whether a state's given framework "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgressed any recognized principle of fundamental fairness in operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)). We perceive no inadequacy in CP § 8-201 that would impede Appellant's ability to vindicate his state right to seek DNA testing or to seek relief when the State has destroyed the evidence intended to be tested.

In conclusion, Appellant sought redress for his inability to challenge his conviction due to the State's post-trial destruction of his DNA evidence. Initially, Appellant correctly followed the procedures provided to him by CP § 8-201, and the legislature has provided a direct right to appeal to the Court of Appeals an unfavorable ruling under CP § 8-201. To allow an appeal in this case from the court's denial of Appellant's habeas corpus petition as well as an appeal of Appellant's CP § 8-201 petition for the same injury—the State's destruction of DNA evidence—would be duplicative and would thwart the legislature's goal in enacting the statutory post-

21

conviction system to streamline rights and remedies. As noted above, Appellant was afforded a hearing under CP § 8-201 on May 14, 2014 following notice that the State destroyed his evidence, and his appeal of the subsequent denial of his petition is currently pending before the Court of Appeals. Therefore, because CP § 8-201 is an avenue by which Appellant could and did seek relief, and because that relief, if warranted, would be a post-conviction proceeding under the UPPA, we conclude that CP § 7-107 does not authorize this appeal.

## B. The Principles of Liberal Construction

To avoid dismissal, Appellant, now through counsel, urges this Court to liberally construe his *pro se* petition for writ of habeas corpus as a petition for writ of actual innocence under CP § 8-301 in order to reach the merits. Even if we were to conclude that Appellant's petition could be liberally construed as one for a writ of actual innocence, the result would not be a review of the merits, but a remand to the circuit court. *See, e.g., Simms, supra,* 409 Md. at 731-33 (remanding, without reviewing the merits thereof, to the circuit court to address the appellant's "Motion for New Trial and Release of Evidence for DNA Testing," which, when construed liberally, satisfied the pleading requirements of CP § 8-201); *State v. Matthews*, 415 Md. 286, 297-98 (2010) (remanding, without reviewing the merits thereof, to the circuit court to treat appellant's "Motion for Appropriate Relief/New Trial" raising a witness's recantation as a Petition for Writ of Actual Innocence).

22

Moreover, Appellant does not request that we remand to the circuit court for consideration of the petition as one for writ of actual innocence, and we are otherwise hesitant to do so. The circuit court did not rule on an actual innocence issue because it was "not properly raised in his current Petition for Writ of Habeas Corpus[,]" citing *Ricail v. Warden of Maryland House of Correction*, 210 Md. 664, 665-66 (1956), for the proposition that a "[p]etitioner cannot make use of habeas corpus to offer evidence of an alibi or other proof of innocence." This precept has not been altered by recent case law. Although we generally liberally construe pleadings filed by *pro se* litigants, in this context, the liberal construction of a habeas petition as one *also* for a writ of actual innocence would permit and encourage what this principle prohibits. For that reason, we decline to extend and apply the liberal construction principle in this manner. Moreover, this decision does not foreclose any of Appellant's rights; without commenting on the potential merit, we note that if Appellant wishes to pursue his claim of actual innocence, Appellant may file a Petition for Writ of Actual Innocence at any time. CP. § 8-301(a) (2008 Repl. Vol. & Supp. 2013).

**APPEAL DISMISSED;**
**COSTS WAIVED.**